CHARLES M. STERLING v. JAMES B. DRAKE, SHERIFF OF MAHONING COUNTY.

1. By virtue of the provisions of article 3, section 11, of the constitution, the governor is authorized of his own motion to reprieve or suspend, for a specified interval of time, the execution of a prisoner under sentence of death.

2. Such reprieve is not conditional within the meaning of section 214 of the code of criminal procedure, and the assent of a prisoner thereto is unnecessary.

3. A warrant from the governor to the sheriff, to suspend the execution of a prisoner until a day specified, and commanding him on that day, between the hours named, to execute the sentence, is a proper form of reprieve, and authorizes the sheriff, on the day named, to execute the prisoner without the further order of the court.

MOTION for leave to file a petition in error to reverse the judgment of the Court of Common Pleas of Mahoning county.

At a regular term of the Court of Common Pleas of Mahoning county, to wit, on the 9th of April, 1877, Charles M. Sterling made application to the court for a writ of *habeas corpus*, representing that he was imprisoned by the sheriff of Mahoning county without any legal authority, under color of a pretended warrant and commitment of the governor of Ohio. The writ was issued, and on the 11th day of April, 1877, the sheriff made the following return thereon: "The State of Ohio, Mahoning county, ss. I,

James B. Drake, sheriff of said county, hereby return and certify to the court of common pleas of said county, that the within named Charles M. Sterling was taken into custody of him the said James B. Drake, as such sheriff, on the first day of January, A. D. 1877, under and by virtue of an order of said court, made to him in open court, at the September term of said court, A. D. 1876, in a criminal suit and proceeding against said Charles M. Sterling in the name of the State of Ohio, for the crime of murder—the records of which criminal suit and proceedings, verdict, sentence, and order of court, are on record in said court, and before said court; and now I, said sheriff, have the body of said Charles M. Sterling by virtue of said order of court, and the warrant of the governor of the State of Ohio issued to me, a copy of which is attached, commanding me to carry the sentence of said court into execution, and I now have the body of said Charles M. Sterling, together with the cause of his caption and detention before the court as within commanded."

The governor's warrant, a copy of which was attached, reads as follows:

"THE STATE OF OHIO, EXECUTIVE DEPARTMENT,

"COLUMBUS, *March* 26, 1877.

"*To the Sheriff of Mahoning County, greeting*:

"Whereas, Charles M. Sterling was, at the September term, A. D. 1876, of the Court of Common Pleas of Mahoning county, Ohio, convicted of murder in the first degree, and was, on the 5th day of December, A. D. 1876, sentenced to be hanged on the 28th day of March, A. D. 1877; and whereas, good and sufficient reasons have become known to me why the execution of said sentence should be respited for a time: Now, therefore, I, Thomas L. Young, governor of the State of Ohio, by virtue of the power and authority vested in me by the constitution and laws of said state, do hereby reprieve the said Charles M. Sterling until the 21st day of April, A. D. 1877, and I do hereby command you, the sheriff of said Mahoning county, that you delay the execution of said sentence against the said Charles M. Ster-

ling, until Saturday, the 21st day of April, in the year of our Lord one thousand eight hundred and seventy-seven.

"You are further commanded that, on said day last named, to wit, the 21st day of April, A. D. 1877, between the hours of 10 A. M. and 2 P. M., you proceed to carry into execution the sentence of said court of common pleas against said Charles M. Sterling. In witness whereof," etc.

The cause was heard before the court of common pleas on the return of the sheriff and copy of the governor's warrant attached, no other evidence being offered by either party. The court found "that the said Charles M. Sterling never accepted said reprieve in any manner whatever, and that said sheriff now holds said Sterling by said warrant, issued by said Thomas L. Young as governor." "The court therefore finds and holds as matter of law, that said warrant is in all respects legal and according to law, and orders the said Charles M. Sterling into the custody of respondent to be dealt with according to the terms of said warrant." Exceptions were saved to the finding and order of the court by Sterling, who now moves the court for leave to file a petition in error on the grounds: 1. That the court erred in holding said warrant to be legal and binding.

2. That the court erred in not releasing said Sterling from custody.

3. That the court erred in remanding said Sterling into the custody of the sheriff to be dealt with according to the terms of said warrant.

*Murray & Anderson,* for the motion.
*C. R. Truesdale,* contra.

GILMORE, J. The only points made in this case are these:

1. That the governor had no power to reprieve Sterling without his assent thereto.

2. That the governor had no authority to order the execution of the sentence of death after the day fixed by the court for the execution of the sentence had passed.

I have been unable to find a single decided case relative

to executive reprieves by virtue of the constitutional provisions of any state in the Union, or relative to reprieves in England by virtue of this prerogative of the crown, that has the slightest bearing upon either of the points stated. There is one precedent in this state that will be noticed hereafter.

The terms "pardon" and "reprieve" have been adopted into the constitution of this state without defining or explaining them. The substance of the provisions of our constitution relative to pardons and reprieves has been borrowed and adopted from the laws of England, and the construction or effect that is there given to them was adopted with and must be given to them here.

By virtue of his prerogative in this respect, the king of England has from time immemorial exercised the power of pardon in criminal cases. "His (the king's) power of pardoning was said by our Saxon ancestors to be derived *a lege suæ dignitatis;* and it is declared in parliament, by stat. 27 Hen. VIII, c. 24, that no other person hath power to pardon or remit any treason or felonies whatsoever, but that the king hath the whole and sole power thereof united and knit to the imperial crown of this realm." 4 Black. Com. 397.

"This power belongs only to a king *de facto,* and not to a king *de jure,* during the time of usurpation." Bro. Abr. t, *Charter de Pardon,* 22.

I have thus alluded to the power of the king to grant pardons by virtue of this prerogative, in order to show the source and extent of the power, as no writer whom I have consulted has undertaken to look for the source of the power to reprieve with which the sovereign is clothed.

There is no doubt anywhere expressed, however, but that the king's power to reprieve is as ample as his power to pardon.

I will first look to what some of the English text-books teach in reference to reprieves.

Sir W. Blackstone, 4 Com. 394, says that, "A reprieve, from *reprendre,* to take back, is the withdrawing of a sen-

tence for an interval of time, whereby the execution is suspended."

It operates only in capital cases, and is granted either by the favor of his majesty himself, or the judge or justices before whom the prisoner was tried, in his behalf, or from the regular operation of law, in circumstances which render an immediate execution inconsistent with humanity or justice.   Chitty's Cr. L. 757.

Reprieves are of three kinds:

1. *Ex mandatio regis*, from the mere pleasure of the crown.

2. *Ex arbitrio judicis.*   Sometimes the judge reprieves before judgment, as where he is not satisfied with the verdict,. or the evidence is uncertain, or the indictment defective; and sometimes after judgment, if it be a small felony,. though out of clergy, or in order to a pardon or transportation.   The power of granting this respite belongs of common right to every tribunal which is invested with authority to award execution.   *The justices of assize may, by long practice, either grant arbitrary reprieves, or take them away, after the termination of their sessions; though this seems rather to stand on ancient usage than any express authority or recognized principle.*   2 Hale, 412 ; 1 Ch. Cr. L. 758, 759.

3. *Ex necessitate legis.*   There are some cases in which the judge is bound to reprieve.   Thus: 1. When a woman is convicted either of treason or felony she may allege pregnancy of a *quick child* in delay of execution.   2. When a prisoner has become insane between the time of sentence and the time fixed for execution.   1 Chitty Cr. L. 761.

From the above it will be seen that the power to reprieve persons under sentence of death was one of the prerogatives of the king himself, and the justices before whom the prisoner was tried, acting in behalf of the king, might either grant arbitrary reprieves or take them away even after the termination of their sessions. If those acting in behalf of the king, by long usage, had become authorized to thus grant or take away reprieves, it must be conclusively inferred that they were acting within the scope of the

powers with which the sovereign, on whose behalf they acted, was clothed by virtue of this prerogative. In fact, the power of the sovereign in this respect seems never to have been questioned.

It will now be my object to show that we have substantially adopted in our constitution the principles of the doctrine of reprieves, as understood in England, and if this be so, then it will follow that the powers with which the executive of this state is clothed by virtue of these constitutional provisions, will be the same after conviction as those with which the executive of the nation whose laws we have adopted is clothed. Article 3, section 11, of the constitution, among other things, ordains that: "He (the governor) shall have power after conviction to grant reprieves, commutations, and pardons for all crimes and offenses except treason and cases of impeachment, upon such conditions as he may think proper."

This language is broad enough to clothe the executive with all the powers in reference to pardons and reprieves, after conviction, that the king of England is clothed with by virtue of his prerogatives, except that the king may pardon, after conviction, even in cases of impeachment. Following the order in which the subject is treated by English-text writers:

1. The governor, by virtue of the language of the constitution, has *power* to grant a reprieve for an interval of time, to one under sentence of death, of his own motion or volition, though it is scarcely supposable that he would do so without the solicitation of the prisoner or his friends.

2. In Ohio, the judges have no power to grant arbitrary reprieves; but the court before whom the conviction is had, on notice that the person convicted intends to apply for a writ of error, may suspend the execution of the sentence until the next term of the court. Criminal Code, sec. 172. In cases of conviction where the punishment shall be capital, the judges or court allowing a writ of error shall order a suspension of the execution until such writ of error shall be heard and determined; and upon hearing such

writ of error they shall order the prisoner to be discharged, a new trial to be had, or appoint a day certain for the execution of the sentence. Criminal Code, sec. 200, These are substantially the equivalents of the power of English justices to reprieve.

3. If a female convict sentenced to the punishment of death appear to be pregnant, a jury of six persons shall be summoned to try the fact; and if, by the finding, it shall appear that such female convict is with child, the sheriff shall suspend the execution of her sentence, and transmit the finding to the governor, who, on being satisfied that such woman is no longer pregnant, shall issue a warrant appointing a day for her execution. Criminal Code, secs. 190, 191.

Sections 187, 188, and 189 of this code provide, in substance, that if any convict sentenced to the punishment of death shall appear to be insane, the question of insanity shall be tried by a jury of twelve; and if it be found that the convict is insane, the execution of the convict shall be suspended, and the governor notified thereof, who shall, as soon as he is convinced that the convict has become of sound mind, issue a warrant appointing a time for his execution.

Thus it will be seen that, with such modifications in form as were necessary to adapt them to our systems of government and jurisprudence, we have adopted and incorporated into our constitution and laws the spirit of the laws of England in reference to reprieves.

But it is contended that the governor had no power to reprieve Sterling without his consent, under section 214 of the criminal code, which provides: " Whenever the governor may deem it expedient and proper to reprieve any person under sentence of death, under any condition whatsoever, the condition upon which such reprieve is granted shall be specified in the warrant, and the person accepting such conditional reprieve shall subscribe such acceptance upon the warrant," etc. The object sought to be accomplished by this section would, in my opinion, constitute a *pardon* instead of a reprieve upon conditions. It would

clearly have been so at common law. 4 Bla. Com. 401 ;. Chitty's Cr. L. 773. But be this as it may, we are all of opinion that this is not a reprieve upon condition within the meaning of the section, which evidently contemplates a punishment other than the execution of the person under sentence of death, and he is required to accept the modification on the theory that a punishment different from that imposed by the sentence of the court, can not be thrust upon him by the governor without his consent. The reprieve in the case before us was unconditional. It suspended the execution of the sentence for a specified interval of time, and it has already been said that the governor had power to grant such a reprieve, and the consent of the prisoner thereto was not necessary.

Next it is claimed that the governor had no authority to order the execution to take place on a day other than that fixed by the court.

Although I can find nothing in the books bearing upon the point, it is probable that in England, when the king reprieves one under sentence of death, for a specified interval of time, and permits this time to elapse without further commands on the subject, that the execution of the sentence of the court takes place as a matter of course. For myself, I can not see why this would not be the proper practice in Ohio. The reprieve does not annul the sentence, but merely delays or keeps back the execution of it, for the time specified. In other words, it substitutes a day other than that fixed by the court for the execution, and when that day arrives, it is by virtue of the sentence of the court, and not the command of the governor, that the execution takes place. A majority of the court, however, are of the opinion that the governor properly commanded the execution to take place on the day named in the warrant. We all agree that the execution took place in pursuance of law. The command of the governor's warrant authorized the sheriff to execute the prisoner on the day named, without the further order of the court.

From the constitutional power to reprieve, and thus sus-

pend the execution of the sentence by the governor for an interval of time, the power to do whatever might be necessary to make the sentence again effective at the expiration of the time specified, would necessarily be implied.

Without this power, the governor would not dare, in any case, to use the power of reprieve with which he is clothed, for fear that he might thereby cause an entire failure of justice. The power is intrusted to the governor for merciful and beneficent purposes, and no construction should be put upon this constitutional provision that will prevent him from freely using the power of reprieve for the purposes intended.

In a note to the case of *Gardiner* v. *The State*, Wright, 404, there is a precedent for a reprieve and subsequent execution of the prisoner on the day named in the governor's warrant. The warrant in that case differed from that in the case before us in this, that it required the prisoner to subscribe and acknowledge his consent to the reprieve, in pursuance of the act of January 27, 1818 (Chase Stat. 1036), the first section of which has been adopted as section 214 of the code of criminal procedure above cited. There was no question made as to the legality of the governor's action in that case. Notwithstanding Governor Lucas must have regarded the reprieve as conditional, and therefore required the prisoner's assent thereto, we are clearly of the opinion that the reprieve was unconditional in that as in this case.

Besides, the constitution of 1802 (art. 2, sec. 5), unlike the present, did not provide for *conditional* pardons and reprieves. In the absence of such a constitutional provision, it may be doubtful whether the executive was authorized to grant conditional pardons or reprieves at all. *Commonwealth* v. *Fowler*, 4 McCall, 35.

*Motion overruled.*