## In the Matter of Robert W. Buchanan, a Defendant Sentenced to the Penalty of Death, etc.

An appeal direct to the United States Supreme Court is not authorized either by the United States Revised Statutes or the act of congress of 1891 (Chap. 517, Laws of 1891), creating Circuit Courts of Appeal, from a decision of a judge of a District Court at Chambers, denying an application for a writ of habeas corpus.

Such an appeal, therefore, does not operate as a stay, and where the writ was applied for in case of one imprisoned under judgment of a state court finding him guilty of murder and sentencing him to death, it furnishes no reason for delaying the execution of the sentence.

*It seems,* it was not the purpose of the fourteenth amendment to the United States Constitution, declaring that no state shall "deprive any person of life, liberty or property without due process of law," to interfere with the ordinary administration of justice by the courts of a state, or to affect the final and ultimate jurisdiction of those courts over crimes and offenses, defined and declared by its laws, and committed within its territorial jurisdiction.

*It seems,* also, that while in case of accusation of crime the accused is entitled to an inquiry, a hearing and a judgment before he can be deprived by sentence of his liberty or life, within these limitations what constitutes "due process of law" is to be determined by the state in every case where it can exercise rightful authority, and said amendment confers no jurisdiction upon the Federal courts to supervise the administration by state tribunals of the criminal law of the state, to correct errors committed on trial, or to modify or change their judgments.

A reprieve to a day certain granted by the governor in a capital case, which day is beyond the week in which, by order of the court, the execution was to take place, does not render it necessary to have the prisoner brought before the court to have the time of execution again fixed, but authorizes the execution of the sentence on the day on which the reprieve terminates.

The distinction between a reprieve and a suspension of sentence pointed out.

The provisions of the Code of Criminal Procedure (§§ 503, 504) providing that when a person sentenced to death has not, for any reasons save those specified, been executed pursuant to the sentence at the time specified, and the judgment inflicting the sentence stands in full force, such person shall be brought before one of the courts specified and the day for the execution of the sentence again fixed, does not apply in the case of a reprieve, unless the day fixed thereby has passed and the sentence has not been executed, in which case the provisions are applicable.

(Argued May 20, 1895; decided May 28, 1895.)

MOTION for an order directed to the agent and warden of the state prison at Sing Sing, in whose custody Robert W. Buchanan is, commanding that he be brought before the Court of Appeals in order that it may inquire into the circumstances, and, if no legal reason exists, direct the execution of his sentence.

This is an application of the district attorney of the city and county of New York under section 503 of the Code of Criminal Procedure, for an order to bring Robert W. Buchanan before this court to the end that a warrant be issued under section 504, commanding the agent and warden of the state prison at Sing Sing to do execution of the sentence of death heretofore pronounced against him. Buchanan on the 10th day of August, 1893, was convicted in the Court of General Sessions of the Peace in and for the city and county of New York of the crime of murder in the first degree, and was sentenced to the punishment of death, the sentence to be executed during the week commencing October 2nd, 1893. Appeal was taken by the defendant to this court from the judgment of conviction and the court affirmed the judgment February 26th, 1895. The original time fixed for the execution of the defendant having passed before the affirmance of the judgment in this court, he was thereafter brought before the Court of Sessions, in which the trial was had, and a warrant was issued commanding execution of the sentence during the week commencing Monday, April 23d, 1895. Before the time appointed for the execution of the sentence and on the 11th of April, 1895, counsel for the defendant applied upon his petition to Judge BROWN, one of the associate justices of the Supreme Court of the United States, praying that a writ of error and supersedeas might issue out of that court to the Court of General Sessions of the city and county of New York. The petition for the writ set forth the facts of his conviction; the affirmance of the judgment by this court; the re-sentence, and alleged as the grounds of the application (1) that the life of the petitioner was sought

to be taken without due process of law, and (2) that he was not tried by an impartial jury.

In support of these general allegations the petition set forth what occurred on the trial in connection with the juror Paradise, and it was alleged that he was physically and mentally incapacitated to take part in the deliberations of the jury and from participating in the verdict, and that the verdict by reason thereof was the verdict of eleven jurors only. Judge BROWN referred the application to the full bench of the Supreme Court, which court after hearing counsel and on the 16th day of April, 1895, denied the application for the writ on the ground that the petition did not disclose any Federal question or any denial of due process of law, the competency of the juror being a matter within the sole cognizance of the state tribunals. On Tuesday, the 23d day of April, 1895 (during the week appointed for the execution of the sentence), the execution not having taken place, the governor of the state, upon application of the friends of the defendant and persons interested in his behalf, granted a respite of execution until May 1, 1895. On the 29th day of April, 1895, the defendant, through his counsel, applied to Judge ADDISON BROWN, judge of the United States District Court for the southern district of New York, at Chambers, for a writ of habeas corpus. The petition alleged that the defendant was illegally and unlawfully restrained of his liberty in violation of the statute and laws of the United States, and of the statutes of this state, and of the treaty between the United States and England, and that his trial and conviction was in violation of said statutes and laws and of said treaty, and of the Constitution of the United States. The petition was based upon two assertions: (1) That the juror Paradise did not possess the qualifications of jurors specified in the state statutes, in that he was not in possession of his natural faculties nor of sound judgment, and (2) that the threat to execute the defendant on the 1st day of May, 1895, the day to which the execution has been respited, was in violation of law, for the reason that a respite by the governor did not authorize the

execution of a death sentence on the day when the respite terminated, and that a new day could only be fixed by the court on application and under the sections of the Code of Criminal Procedure before referred to.    Judge Brown refused to grant the writ and indorsed on the petition a statement that he found therein "no legal reason for entertaining or further considering the application." No formal order was entered denying the writ, nor any other entry of the decree made.    Thereupon, on the same day (April 29th), the counsel for the defendant prepared and caused to be filed in the office of the clerk of the District Court a notice of appeal from the decision of Judge Brown, entitled in the proceeding, to the Supreme Court of the United States, on which was indorsed by the clerk, "Notice of appeal filed April 29, 1895." It appears that on the 30th of April one of the defendant's counsel presented to the clerk of the United States Supreme Court in Washington a document which purported to be a transcript of the record of the proceedings before Judge Brown.    The clerk refused to receive or file the papers, on the ground that no appeal had been allowed, and informed the counsel that he could apply for an allowance to a judge of the Supreme Court or to the court which was then in session. But no further application appears to have been made.

The governor of the state on May 1, 1895, granted a further respite to Wednesday, May 8th.    Meanwhile a question had been raised as to the effect of the appeal on the habeas corpus proceeding to the Supreme Court of the United States, and whether it operated as a stay of proceedings until the appeal was heard and determined.    The question was informally presented to the attorney-general, and the practice and law being unsettled he advised that the opinion of the court should be taken.    This involved a further postponement of the execution of the sentence, and the day of the second respite having expired and no time thereafter being fixed for its execution, this present application was made.

*John R. Fellows* and *John D. Lindsay* for application. The application should be granted.    (Code Crim. Pro. § 503.)

The contention that the supposed appeal in the habeas corpus proceedings in the District Court operates as a stay of proceedings and renders any further action in the state courts null and void is untenable. (U. S. R. S. §§ 735, 751, 752, 753, 763–765, 766; 139 U. S. 705; *Nishimura Elkin* v. *United States*, 142 id. 651; *Lanow Bew* v. *United States*, 144 id. 47; *Horner* v. *United States*, 143 id. 570; *Cross* v. *Burke*, 146 id. 82; *In re Lennon*, 150 id. 397.) No appeal would lie from Judge BROWN's decision even had an order been entered formally expressing his action. (*Lambert* v. *Barrett*, U. S. Sup. Ct., Apr. 15, 1895.)

*George W. Gibbons* and *Daniel T. Kimball* opposed. The application should not be granted; there is an appeal to the United States Supreme Court, all the requirements of law have been complied with, and it operates as a stay of execution. (*Hudgris* v. *Kemp*, 18 How. [U. S.] 530; *Ex parte Whitton*, L. R. [13 Ch. Div.] 881; *Estey* v. *Sheckler*, 36 Wis. 437.)

ANDREWS, Ch. J. This application must be granted "if no legal reason exists against the execution of the sentence." (Code Crim. Pro. § 504.) The only suggestion made by counsel for the defendant containing a semblance of a legal reason against granting the application is that the appeal to the United States Supreme Court, taken on the 29th day of April, 1895, from the decision of the district judge denying the writ of habeas corpus, operated to suspend all proceedings and deprived the state courts of any power to act in the premises until the appeal shall be heard and determined. There is no ground for such a contention. That appeal has not only never been perfected by obtaining an allowance thereof (assuming that such an appeal would lie), but it was wholly inoperative and ineffectual, for the reason that under the statutes of the United States no appeal can be taken to the Supreme Court from an order made by a district judge at Chambers in a habeas corpus proceeding. Prior to the act of

Congress, chap. 517 of the Laws of 1891, passed March 3, 1891, entitled "An act to establish Circuit Courts of Appeals and to define and regulate in certain cases the jurisdiction of the courts of the United States and for other purposes," appeals in habeas corpus proceedings before Federal officers or courts were regulated by the provisions of chap. 13 of the Revised Statutes of the United States (§§ 751 to 766). The Supreme Court and the several Circuit and District Courts, and the several justices and judges thereof within their respective jurisdictions, had power to issue the writ, and from the final decision of any court, justice or judge inferior to the Circuit Court upon an application for the writ, or upon the writ when issued, an appeal could be taken to the Circuit Court for the district in which the cause was heard in the case of any person alleged to be restrained of his liberty in violation of the Constitution of the United States, or of any law or treaty of the United States, and in a case involving a question under the law of nations (§ 763). But no appeal could be taken from the decision of an inferior court or judge directly to the Supreme Court. The only appeal permitted to the Supreme Court was from the final decision of a Circuit Court (§ 764). Pending an appeal authorized by sections 763 and 764, and, until final judgment therein, in a case where the imprisonment under review was under state authority, any proceeding in the matter, in a state court, was by section 766 declared to be null and void. Under the provisions of the Revised Statutes, therefore, the appeal sought to be taken in the present case directly from the decision of the district judge to the Supreme Court would have been unauthorized. Such appeal could not have been taken either from the decision or order of the District Court or of a judge of that court. The act of 1891, which created Circuit Courts of Appeal, changed to some extent the pre-existing system regulating appeals from District Courts. The 5th section authorizes appeals or writs of error to be taken from the District Courts, or from the existing Circuit Courts, direct to the Supreme Court in particular cases, and among

others a case involving the construction or application of the Constitution of the United States. It is the judgment and decision of a District Court, in one of the cases specified, which may be reviewed on direct appeal to the Supreme Court under this section. The section does not authorize such an appeal from an order or decision of a district judge at Chambers, and this is settled by repeated adjudications of the Supreme Court of the United States, the latest of which is *Lambert* v. *Barrett* (157 U. S. 697), decided at the October term, 1894, which was an appeal from the order of a circuit judge denying an application for a writ of habeas corpus in case of a person under conviction for murder by the courts of New Jersey. The Supreme Court dismissed the appeal, FULLER, Chief Justice, saying: " But this is an order of the circuit judge at Chambers, and an appeal from such an order will not lie," citing *Carper* v. *Fitzgerald* (121 U. S. 87); *In re Lennon* (150 id. 393), and *McKnight* v. *James* (155 id. 685).

It is manifest, in view of these decisions, that the attempted appeal to the Supreme Court from the denial by the district judge of the writ of habeas corpus was a nullity. The appeal was unauthorized. The Supreme Court acquired no jurisdiction, and it is needless to say that an appeal not allowed by law to a court which had no power to entertain it could not operate as a stay, and furnishes no reason for delaying the execution of the sentence.

We might here close the consideration of this case. But this court had occasion in the case of *The People* v. *Jugiro* (128 N. Y. 589) to allude to the practice of invoking the processes and procedure of the courts of the United States in respect of judgments of the state courts, for mere purpose of delay, and which has brought scarcely less than a scandal upon the administration of the criminal law of this state. The applications to the United States courts after convictions for murder in the state court, have been under pretext of the new jurisdiction conferred upon the Federal courts by the 14th amendment of the Constitution of the

United States and generally under that clause which declares
"Nor shall any state deprive any person of life, liberty or
property without due process of law." But it was not the
purpose of this amendment to interfere with the ordinary
administration of justice by the courts of a state, or to affect
the final and ultimate jurisdiction of the courts of a state over
crimes and offenses defined and declared by its laws and com-
mitted within its territorial jurisdiction. The phrase "due
process of law" used in the Constitution, came to us from our
English ancestors. The Constitution secures the citizen against
any exercise of merely arbitrary power, and protects him
from a violation by a state of these cardinal rights which are
included in every definition of civil liberty. In case of accusa-
tion of crime the accused is entitled to an inquiry, a hearing
and judgment before he can be deprived by sentence of his
liberty or life. But "due process of law" and what consti-
tutes it, is, within the limitation mentioned, to be deter-
mined by the state in every case where the state can exer-
cise rightful authority. The jurisdiction over crimes, save
in exceptional cases, not necessary now to be mentioned,
is a state and not a Federal jurisdiction. The state con-
stitutes appropriate tribunals for the trial of offenses and
prescribes the procedure for the investigation, trial and
punishment of crimes. That is "due process of law" within
the meaning of these words, which affords to every citizen
the equal protection of the laws, and in case of accusation of
crime, the right of trial by jury before one of its duly con-
stituted tribunals having jurisdiction of the crime, under a
procedure which the state prescribes. The 14th amendment
confers upon the courts of the United States no jurisdiction
to supervise the administration by state tribunals of the crim-
inal law of the state, or to correct errors, or to modify
or change their judgments. All errors, however flagrant,
which may have been committed on the trial in the draw-
ing of jurors, or as to their competency; in the reception
or rejection of evidence; in the sentence pronounced, or in
any of the matters which pertain to the procedure and con-

duct of the trial, must be corrected, if at all, in the state courts. The United States courts, in general, can neither inquire as to the justice of a conviction or review the procedure on the trial, or the subsequent procedure, unless there has been no hearing, no trial and no conviction, and what has taken place is the mere semblance of a trial to cover a deprivation of liberty or life in violation of the fundamental principles of liberty and justice. The extent or limitations of the new jurisdiction devolved on the United States courts under the 14th amendment, has not yet been fully ascertained or adjudicated. But the Supreme Court of the United States has steadily and in repeated instances disclaimed jurisdiction under it to review errors assigned on trials in state courts, or to constitute itself a general court of review, and the cases must be rare and exceptional under the construction placed by the court upon the amendment which would justify an invocation of the processes and procedure of the Federal courts to arrest the execution of the judgments of the courts of a state in criminal cases. (See *Hurtado* v. *California,* 110 U. S. 516; *Caldwell* v. *Texas,* 137 id. 692; *McNulty* v. *California,* 149 id. 645; *In re Kemmler,* 136 id. 436; *In re Wood,* 140 id. 278.) The petition presented to the district judge in this case disclosed on its face that no Federal question was involved, and the refusal of Judge BROWN to entertain the proceeding was manifestly proper. The question as to the competency of the juror Paradise to take part in rendering the verdict was raised on the prior application to the Supreme Court of the United States for a writ of error, which was dismissed by the Supreme Court expressly on the ground that the question was exclusively for the state courts. But in the petition for the habeas corpus made after the decision had been announced, the same question, though in a somewhat different form, was made one of the grounds of the application. The other point set forth in the petition, namely, that the reprieve extending to a day beyond the week in which by the order of the court the execution was to take place, made it necessary that a new time should be fixed by the court before

the execution could be had, presented also a purely state question on the construction of certain sections of the Code of Criminal Procedure. It was a matter for the state courts to determine, and whether the proposed execution by the warden was in accordance with the law, or contrary to the law, the remedy of the defendant, if any, was in an application to the courts of the state for direction and relief.

We deem this a proper occasion to express the opinion of the judges that a reprieve by the governor to a day certain, granted in a capital case, authorizes the execution of sentence on the day on which the reprieve terminates, and that it is not necessary that the prisoner should be brought before the court to have the time of execution fixed. By section 5, article 4 of the Constitution of the state, the governor is vested with the power " to grant reprieves, commutations and pardons after conviction." The power of pardon for crimes was in England vested in the king as a royal prerogative, and the power to reprieve a prisoner under sentence was included in the power to pardon. Blackstone (4 Com. 394) defines a reprieve to mean " the withdrawing of a sentence for an interval of time whereby the execution is suspended." It operates in capital cases only. (Chitty Cr. Law, 757.) The distinction between a reprieve and a suspension of sentence, although the words are sometimes used interchangeably, is that a reprieve postpones the execution of the sentence to a day certain, whereas a suspension is for an indefinite time. (See Op. of EDMONDS, J., in *Carnal* v. *People*, 1 Park. Crim. Rep. 262.) The section of the Constitution referred to uses the word suspension in the clause which confers upon the governor the power to " supend the execution of a sentence for treason, until the case shall be reported to the legislature at its next meeting." In *The People* v. *Enoch* (13 Wend. 159), which was an appeal in a capital case, in which the execution of the sentence had been respited by the governor, the chancellor said : " I am of opinion that in a case like the present, where the execution of the sentence is respited by the governor until a particular day, it is the duty of the sheriff to proceed and

execute the judgment of the court at that time, unless further respite is granted or the judgment has been reversed or annulled in the meantime." The same question came before the Supreme Court of Ohio in the case of *Sterling* v. *Drake* (29 Ohio St. Rep. 457), where the governor of Ohio, under a constitutional provision in the Constitution of Ohio, similar to the provision in our Constitution, had granted a reprieve in a capital case to a day certain, and the court held that the sheriff was authorized to proceed on that day to execute the sentence without further action of the court. The governor, under the Constitution, is vested with the prerogative to grant reprieves. This is a power to enlarge and extend the time fixed by the court for the execution of the sentence of death to a day certain in the future. The right to execute the sentence on that day inheres in the power to fix the day to which the reprieve shall extend. If, in case of a reprieve, a re-sentence is necessary, the reprieve is not to a fixed day, but to some indefinite day to be fixed by the court after the day named in the reprieve is passed.

We are of opinion that section 503 of the Code has no application to the case of a reprieve, unless, as in this case, the day fixed thereby has passed and the sentence has for any reason not been executed, although the judgment of conviction is still in full force. We think it was the duty of the warden, in whose custody the defendant was on the 8th day of May, 1895, the day on which the second reprieve terminated, to execute the sentence on that day without waiting for the order of the court.

The court, having considered the reasons presented against granting the present application, and finding in them no legal reason for further delay, has issued a warrant in conformity with section 504 of the Code of Criminal Procedure.

All concur.

Application granted.