6-11    885



## OFFICE OF THE ATTORNEY GENERAL OF TEXAS
### AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable O. J. S. Ellingson
General Manager, Texas Prison System
Huntsville, Texas

Dear Sir:

Opinion No. 0-2598
Re: Whether a prisoner should
receive credit for time
spent out of prison under
proclamations providing
that such time should not
be counted as served.

From your letter of July 31, 1940, and attached
documents, the following facts appear:

Hines Hudson, a convict serving a felony sentence
in the Texas Penitentiary, was the beneficiary of a procla-
mation issued by the Governor of Texas on June 28, 1937,
designated therein as "a one-year reprieve" and providing
that "time out of prison under this proclamation shall not
be considered as time served on sentence." Thereafter on
June 22, 1938, he received another proclamation by the Gov-
ernor giving him "a one-year extension of reprieve" and
containing the same provision as the first mentioned proc-
lamation to the effect that time out of prison under the
same should not be considered as time served on his sentence.
Such proclamations were issued upon the recommendation and
advice of the Board of Pardons and Paroles. In substance,
you request our opinion as to whether or not effect shall
be given to the provisions in the proclamations that the

Honorable O. J. S. Ellingson, Page 2

time out of prison under the proclamations should not be counted as time served, or whether such time should be considered as having been served on the sentence.

In Section 11 of Article 4 of the State Constitution, it is provided that "In all criminal cases except treason and impeachment the Governor shall have power after conviction on the written signed recommendation and advice of the Board of Pardons and Paroles or a majority thereof to grant reprieves and commutations of punishment and pardons; and under such rules as the Legislature may prescribe and upon the written recommendation and advice of a majority of the Board of Pardons and Paroles he shall have the power to remit fines and forfeitures. The Governor shall have the power to grant one reprieve in any capital case for a period not to exceed thirty days; and he shall have the power to revoke paroles and conditional pardons."

It is true, of course, that the substance of the proclamations, not necessarily the names by which they were called, should govern their effect. Ex parte Black, 123 Tex. Cr. Rep. 472. However, we are inclined to the opinion that the courts would hold these proclamations to be exactly what they purport to be, that is, reprieves. Most of the definitions of the word "reprieve" arise out of death penalty cases. There was a time in England when nearly every infraction of the Penal Laws was punishable by death. Of course when the enforcement of the extreme penalty is postponed it is a postponement of the whole sentence. However, the punishment for crime having become more moderate and humane, imprisonment having become the rule rather than the exception, the granting of reprieves is not confined to death penalty cases but may be applied to cases involving lesser punishments. Ex parte Dormitzer, 249 P. 639, Supreme Court of Oregon; Ex parte Black, 123 Tex. Cr. Rep. 472. One of the definitions of reprieve copied in Ex parte Black, supra, is as follows: "The term reprieve . . . is merely used to signify the postponement of the sentence for a time. It does not and cannot defeat the ultimate execution of a judgment of the court; it merely delays it." It can be very well argued that a proclamation postponing the execution of the unexpired part of a sentence would be a reprieve just the same as would be the proclamation which would postpone the execution of the whole of the sentence. In fact the Dormitzer case, supra, involved just the same kind of proclama-

Honorable O. J. S. Ellingson, Page 3

tion as those concerned in this opinion request. The man had embarked upon the service of his sentence before the reprieve was granted. From the opinion of the Supreme Court of Oregon in that case, we quote:

"The word 'reprieve' in its general sense means:

"'A temporary suspension of the execution of a sentence, especially of a sentence of death, or the order or warrant for such suspension.' Webster's International Dictionary.

"'A reprieve is the withdrawing of a sentence for an interval of time whereby the execution is suspended.' 29 Cyc. 1561.

"In its restricted or technical application, the word 'reprieve' is limited to a temporary suspension of a sentence of death. State v. Finch, 54 Or. 482, 497, 500, 103 P. 505; State (Clifford), v. Heller, 63 N. J. Law, 105, 42 A. 155, 57 L. R. A. 312, 315, 317; In re Buchanan, 146 N. Y. 264, 40 N. E. 883. The word 'reprieve' has been used in the opinion of courts in its broader sense. In State (Stafford) v. Hawk, 47 W. Va. 434, 435, 34 S. E. 918, which was not a capital case, but one in which the defendant was sentenced to imprisonment for 12 years, the court uses this language:

"'The power to pardon necessarily includes the power to reprieve or suspend the sentence until the matter can be inquired into and determined. At common law the power to reprieve was lodged in the courts, as the representatives of the king, he being considered the very fountain of justice; and he was never called upon to exercise it except in capital cases of necessity. . . . Because the king was never personally called upon to exercise the power of reprieve, owing to the authority delegated by him to his courts, except in capital cases, has grown up the theory that he had no such power. . . . That he had the power to reprieve or suspend sentence in

Honorable O. J. S. Ellingson, Page 4

any case of necessity, there cannot be the
least doubt.'"

If the proclamations were reprieves, then they
fall squarely within the powers conferred in the above sec-
tion of the Constitution. However, we do not find it neces-
sary to base our opinion solely upon that ground.

If the proclamations were not reprieves techni-
cally, the same result will be reached nevertheless. As said
in 46 C. J. 1205, "The rule sustained by the weight of author-
ity is that the power to pardon includes the power to parole."
In the same authority on page 1197 it is said that "it is
generally held that the power to pardon necessarily contains
in it the lesser power of remission and commutation." And
on page 1196 of the same volume it is also said that it is
generally held that the power to pardon includes the power
to reprieve. On page 1200 it is said that "the power to
grant a pardon includes the power to grant a conditional par-
don, the condition to be either precedent or subsequent."
It is said that the condition may be of any nature so long
as it is not illegal, immoral or impossible of performance.
The condition may be that the convicted person shall leave
the State and never again return to it. 20 R. C. L. 553;
46 C. J. 1201. In the case of Ex parte Davenport, 7 S. W.
(2d) 589, our Court of Criminal Appeals held that the con-
dition in a pardon that the convict should be immediately
committed to and kept confined in an insane asylum was a
valid condition, the violation of which made the pardon sub-
ject to revocation as provided therein. From 20 R. C. L.
555 we quote:

". . . A condition of a pardon that requires
reimprisonment for the remainder of the original
sentence of imprisonment, after the expiration of
the particular period of time fixed by the court with-
in which the sentence imposed should be executed,
is valid. It cannot be said to be immoral, or to
be impossible of performance during the life of
the petitioner; nor can it be illegal, since the
particular period of time within which the sen-
tence is to be suffered by the convict as speci-
fied in the sentence is not a part of the legal
sentence, except so far as it fixes the quantum
of time that he must suffer such penalty, and the

condition imposed is not forbidden and does not
increase the punishment imposed by the court in
its sentence. . . ."

The above quotation from Ruling Case Law is well
sustained by the authorities which it cites in the foot
note. In the case of State v. Horne, 7 L. R. A. (N.S.)
719, it was held that a conditional pardon may by its ex-
press terms provide that upon violation of the conditions
the offender shall be liable to summary arrest and recom-
mitment for the unexpired portion of his original sentence.
Such stipulations upon acceptance of the pardon become
binding upon the convict and authorize his rearrest and
recommitment in the manner and by or through the officials
authorized as stipulated in the pardon. From the opinion
of the Supreme Court of Florida in that case we quote:

"The condition of the pardon in this case
that requires reimprisonment for the remainder
of the original sentence of imprisonment, after
the expiration of the particular period of time
fixed by the court within which the sentence im-
posed should be executed, cannot be said to be
immoral, or to be impossible of performance dur-
ing the life of the petitioner; nor can it be il-
legal, since the particular period of time within
which the sentence is to be suffered by the con-
vict as specified in the sentence is not a part
of the legal sentence, except so far as it fixes
the quantum of time that he must suffer such pen-
alty, and the condition imposed is not forbidden
by law, and does not increase the punishment im-
posed by the court in its sentence. The case of
State ex rel. Davis v. Hunter, 124 Iowa, 569,
104 Am. St. Rep. 361, 100 N. W. 510, does not
conflict with this rule, as in that case a con-
dition imposed was held to be illegal. 4 Current
Law, 872.

"If the particular period of time fixed by
the court within which the execution of the sen-
tence of imprisonment was to be fully performed
or suffered is extended, or held in abeyance, or
postponed, the time or duration of imprisonment
is not thereby increased, and the interruption
of the execution of the sentence during the time
the petitioner enjoyed his liberty under the

Honorable O. J. S. Ellingson, Page 6

conditional pardon was secured by him by his acceptance of the conditional pardon, and the petitioner cannot complain of it.

"If the condition of the pardon upon which the petitioner secured his release from imprisonment has been violated by him, the pardon is void, and the petitioner may be arrested and compelled to undergo so much of the original sentence as he had not suffered at the time of his release. . . ."

In the case of Re Brock Kelly, 20 L. R. A. (N.S.) 337, the Supreme Court of California entered the same holding as the Supreme Court of Florida did in the Horne case, saying that "the power to annex to a pardon or commutation any reasonable condition prior or subsequent is implied upon the principle that the greater includes the less." The case of Miller v. The State, 45 L. R. A. 502, before the Alabama Supreme Court, arose under a constitutional provision vesting in the Governor the power to remit fines and forfeitures and to grant reprieves, commutation of sentence and pardons. The statutes of that state made provisions for the granting of paroles and Miller was the recipient of such a proclamation. The parole having been revoked in accordance with the provisions of the statute and he having been reincarcerated filed a petition for his release upon the ground of lack of authority for his recommitment. The court there said that "the parole of a convict is in the nature of a conditional pardon and within the constitutional grant of the pardoning power to the Governor", and sustained the statutes. It was further held that "if he prefers to serve out his sentence as originally imposed upon him to a suspension of it by subjecting himself to the conditions nominated in the parole he has the clear right to do so. But if he elects to accept the parole and avails himself of the liberty it confers he must do so upon the conditions upon which alone it is granted to him. One of these conditions is that his sentence shall continue in fieri and that the Governor shall have the power to execute it in full upon him should he forfeit the liberty and immunity conditionally secured to him by the executive order."

A pardon may contain a condition that the convict shall maintain good behavior and observe the law and the

Honorable O. J. S. Ellingson, Page 7

rules of parole provided by the Board of Prison Commissioners and the power may be vested in the Governor to himself alone determine the question as to whether such conditions have been violated. Ex parte Redwine, 236 S. W. 96.

In the case of Ex parte Dormitzer, already quoted from, the court further said that "regardless of whether or not the Governor exceeded his authority in granting the so-called reprieve Edminson has no ground for complaint. He accepted the favor of the Governor and was thereupon released from jail."

In the instant case the paroles, if they were paroles, in effect contained the conditions that if the prisoner should presently obtain his liberty for the period of time specified therein, he would thereafter serve the same length of time in the penitentiary. The proclamations offered the prisoner the choice as to whether he would take his liberty at the time of the proclamation or whether he would serve out his term and then take such liberty. He preferred to have his liberty then and to give up to the State an equal period of time at a later date. He had that choice, and he exercised it. If in his judgment the proclamation offered him nothing of value, then he was not compelled to accept it. We do not believe that there was anything immoral in the condition which would require the later service of the remainder of the sentence. As indicated above, we are also of the opinion that the power to pardon includes the power to issue this lesser form of executive clemency.

From 8 R. C. L. page 259, we quote:

"The judgment is the penalty of the law, as declared by the court, while the direction with respect to the time of carrying it into effect is in the nature of an award of execution. Where the penalty is imprisonment, the sentence of the law is to be satisfied only by the actual suffering of the imprisonment imposed, unless remitted by death or by some legal authority. Therefore the expiration of time without imprisonment is in no sense an execution of the sentence. Accordingly where the judgment and sentence is imprisonment for a certain term, and from any cause

the time elapses without the imprisonment being endured, it will still be a valid, subsisting, unexecuted judgment. And where a convict is permitted to absent himself from prison the time when he is absent is no part of the sentence. And therefore where a convicted defendant is at liberty and has not served his sentence, if there is no statute to the contrary, he may be rearrested as for an escape, and ordered into custody on the unexecuted judgment, and the result is the same if he escapes to another jurisdiction and is brought back, though by illegal means."

In the case of Hopkins v. North, 49 A. L. R. 1303, by the Maryland Court of Appeals, a man named Whitby serving a sentence in jail became seriously ill and upon advice of the jail physician was given over to some of his friends so that he could receive proper treatment. He was taken to a hospital or sanitarium. Later the State's attorney filed a mandamus petition to compel the sheriff to arrest Whitby and keep him in jail until he had served out the part of the sentence which remained unserved at the time he had been released for medical treatment. The mandamus was granted. From the court's opinion we quote as follows:

"The chief questions are whether Whitby is still subject to the sentence imposed upon him, and, if he is, then whether a mandamus issued upon the petition of the state's attorney is a proper remedy to use in compelling the sheriff to see that he serves that sentence? The decided weight of authority, and, in our opinion, the better reasoned cases hold that, where a prisoner secures his liberty through some illegal or void order, it is to be treated as an escape, and he can be retaken and compelled to serve out his sentence, even though the time in which the original sentence should have been served has expired. (Citing authorities) In the present case it is, as we have seen, conceded that the magistrate's order directing Whitby's release was invalid, and that the sheriff's action in releasing him, though done in good faith, was unauthorized and illegal, but it is also clear that Whitby was given his liberty upon the distinct understanding that

when he had recovered from his illness he would return to jail and serve the unexpired portion of his sentence. He took advantage of his illegal release by leaving jail, and secured the benefit of the special medical treatment which this release enabled him to obtain, and it would seem to be a travesty on justice to hold that he can now escape the penalty the law has inflicted upon him by claiming that his release was illegal. Such a holding would not only be technical, but, under the facts shown in the record, it would also be against public policy. We accordingly think that under the circumstances of this case Whitby must be treated as having escaped, and so is subject to arrest, and that upon his arrest he can be compelled to serve the remainder of his sentence."

In the case of Re Volker, 72 A. L. R. 1267, by the Nebraska Supreme Court, the defendant having been convicted and sentenced to a term of imprisonment and having appealed and the sentence having been affirmed, and the state officials having failed to take him into custody immediately upon affirmance, the question under consideration was whether the convict was entitled to have the time intervening between the return of the mandate and the time of his arrest credited upon his sentence. The court denied the credit. From the court's opinion we quote as follows:

"True, while Volker did not request the delay, he was charged with knowledge of the status of his case and thereby he clearly acquiesced in the delay. Counsel observe that Volker assumed that 'the matter had been disposed of in his favor.' But will it be seriously argued that the mere assumption of a material fact by a litigant can be made to take the place of an existing fact? And a litigant is, of course, in the absence of fraud or deceit, clearly bound by the actual status of his case. There is nothing in the record going to show that Volker ever at any time made inquiry of any person or of any court official in respect of the then pending case against him in the district court for Douglas County.

Honorable O. J. S. Ellingson, Page 10

The relator's contention of his ignorance of
the status of the case and of its dispostion,
under the facts before us, affords no grounds,
for his discharge from the penalty of imprison-
ment imposed by the court. In a similar case
in California, the court announced this self-
evident rule:

"'The essential part of a sentence of im-
prisonment is not the time when it should be
executed, but the extent of thepunishment fixed;
and the expiration of time, without imprison-
ment, is in no sense an execution of the sen-
tence.' Ex parte Vance, 90 Cal. 208, 27 P. 209,
13 L. R. A. 574.

"'The time when a sentence of imprisonment
shall commence, although specified in the same en-
try, is properly no part of the sentence, and may
be changed by the court at a subsequent term if
for any reason execution of the sentence has been
delayed.' Bernstein v. United States (C. C. A.)
254 F. 967, 3 A. L. R. 1569."

In the case of Ex parte Vance, 27 P. 209, by the
Supreme Court of California, a prisoner liable to jail serv-
ice because of failure to pay a fine was allowed to go at
liberty by the sheriff without authority. It was held that
the time of the prisoner's absence from jail in violation
of law could not be considered as having spent in jail in
satisfaction of the judgment which required his actual im-
prisonment. It was pointed out that the essential part of
the judgment was not the time when it should be executed
but the extent of the punishment fixed. In the case of
Terrell v. Wiggins, 46 So. 727, before the Supreme Court
of Florida, a defendant had been convicted and sentenced
to imprisonment in the county jail at hard labor for twelve
months and said period of twelve months had elapsed. Under
agreement of the prosecuting attorney, however, he had been
permitted to go at liberty during said period of time. The
court pointed out that the prisoner had been at liberty
with his own consent if not at his own request and that the
time fixed for the commencement of the execution of the sen-
tence was not one of its essential elements and strictly
speaking was not part of the sentence at all, saying that

the essential portion of the sentence is the punishment, and that as a rule the sentence with reference to the time of punishment and the amount thereof should be strictly executed. It is again noted that the court rather stressed in that case the fact that the prisoner had been at liberty with his own consent and at his own request.

In opinion No. 2421 by Assistant Attorney General L. C. Sutton, dated March 16, 1922, found at page 171 of the 1920-22 Attorney General's Reports, the opinion was expressed that in cases of furloughs granted to prisoners by the Governor the question as to whether the time spent out on furlough should be counted on the sentence as having been served or whether it should be counted out was a question to be derived from the proclamation.

It must be borne in mind that the prisoner was out of confinement during the period covered by these two proclamations with his own consent and upon his own agreement. He stands in a different light from the prisoner who has been taken from jail or the penitentiary without his consent and incarcerated elsewhere, as in the cases of Minnesota vs. Jorgenson, 224 N.W. 156, in Re Jennings 118 Fed. 479, and Schmidt vs. Swope, 91 Fed. (2) 260, and such as we had under consideration in our opinion No. O-1255. Under any view which we may take of the proclamations in question, it is our opinion that the time during which Hines Hudson was out of the Penitentiary under the same should not be considered as time served on his sentence.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _Glenn R. Lewis_
Glenn R. Lewis
Assistant

GRL:ew

APPROVED OCT 21, 1940

_Gerald C. Mann_

ATTORNEY GENERAL OF TEXAS