Bullitt, Sheriff, v. Sturgeon.

---

CASE 33.—CLARENCE STURGEON WAS DULY TRIED AND CONVICTED OF THE CRIME OF MURDER IN THE CRIMINAL DIVISION OF THE JEFFERSON CIR-CUIT COURT AND SENTENCED TO BE HANGED, FROM WHICH JUDGMENT HE APPEALED, AND THE SAME WAS AFFIRMED BY THE APPELLATE COURT, AND ON APPLICATION TO THE GOVERN-OR, THE 15th DAY OF NOVEMBER, 1907, WAS FIXED FOR HIS EXECUTION. ON APPLICATION TO A JUDGE OF THE CHANCERY BRANCH OF THE JEFFERSON CIRCUIT COURT, A WRIT OF INJUNCTION WAS GRANTED AGAINST THE SHERIFF OF JEFFERSON COUNTY RESTRAINING HIM FROM EXECUTING THE SENTENCE, WHICH WRIT THE SHERIFF SUBMITTED TO THE CHIEF JUSTICE OF THE COURT OF APPEALS AND ASKED ITS DISSOLUTION.

# Bullitt, Sheriff, v. Sturgeon

On motion to dissolve writ of injunction restrain-ing the sheriff from executing Clarence Sturgeon— Motion granted, whole court sitting.

N. B. HAYS, Attorney General, CHAS. H. MORRIS and LO-RAINE MIX for appellant.

WILLIAM A. PERRY, WILLIAM SWEENEY and ENOCH Mc-KAY for appellee.

Bullitt, Sheriff, v. Sturgeon.

1. Constitutional Law—Departments of Government—Infringement on Judiciary.—Fixing the time of execution in a capital case is a ministerial and not a judicial act, so that Criminal Code Prac., section 346, authorizing the Governor to name a day for the execution of the sentence when for any reason it is not carried out on the day fixed in the judgment, is not in violation of Constitution section 28, prohibiting one department of government from exercising any powers properly belonging to the other.

2. Criminal Law—Judgment—Sentence.—Criminal Code Prac. section 290, provides that, if judgment of death be pronounced, the date of execution shall be fixed in the judgment; and section 346 declares that, when a judgment of death has been affirmed, a certificate shall be transmitted to the Governor, that a warrant for the execution of the judgment may be issued by him, and declares that the Governor shall name in the warrant the day and time of execution, not earlier than that which had been fixed upon by the circuit court, and, if the execution does not take place on the day appointed by the Governor, he may from time to time appoint another day of execution, until the sentence is carried out. Held, That while the fixing of a date for the execution of a capital sentence originally is a part of the judgment under section 290, such fact does not make it a judicial act, precluding the Legislature from authorizing the Governor to fix another day in case the sentence is not enforced on the day specified.

3. Constitutional Law—State Constitution—Limitation of Powers.—The State Constitution is not a delegation of powers, but a limitation; so that wherever it has not limited the right of the Legislature, either expressly or by necessary implication, that body has power to legislate.

OPINION OF THE COURT BY JUDGE BARKER—Dissolving injunction.

This case came before the Chief Justice, as a judge of the court of appeals of Kentucky, on a motion of the appellant, A. Scott Bullitt, sheriff of Jefferson county, to dissolve the injunction restraining him from capitally executing the appellee, Clarence Sturgeon. The Chief Justice, deeming the question of sufficient importance, had the whole court sit with

him on the hearing of the motion to dissolve, and assigned to me the duty of delivering the unanimous opinion of the judges upon the questions involved.

Clarence Sturgeon was convicted by a jury in the Jefferson circuit court, criminal division, of the crime of murder, and was sentenced to be hanged on the 25th day of January, 1907. He appealed his case to this court, and the judgment of the lower court was affirmed. The clerk of the court of appeals certified to the Governor of the Commonwealth that the case had been affirmed, and the Governor, in pursuance of the Code, fixed the 15th day of November, 1907, as the day for the execution of the defendant. On the 14th day of November, 1907, Sturgeon filed his petition in the Jefferson circuit court, chancery division, for an injunction restraining A. Scott Bullitt, sheriff, from executing him under the warrant of the Governor. The prayer of the petition asking an injunction was granted by the chancellor, and the case is now before us in the manner above set forth on a motion to dissolve the injunction.

It is the contention of the appellee, Sturgeon, that the Governor, in issuing his warrant to the sheriff to execute him, and fixing the day for the execution therein, after the original day of sentence was passed, was performing judicial acts which he is forbidden to exercise, and which are in violation of appellee's rights. Appellee's theory is based upon the following sections of the Constitution:

"Sec. 27. The powers of the government of the Commonwealth of Kentucky shall be divided into three distinct departments, and each of them be confined to a separate body of magistracy, to-wit: Those which are legislative to one; those which are execu-

tive to another; and those which are judicial to another.

"Sec. 28. No person, or collection of persons, being of one of those departments, shall exercise any power properly belonging to either of the others, except in the instance hereinafter expressly directed or permitted."

It is urgently pressed upon us that fixing a day for the capital execution of a prisoner is a judicial act made so by the statute, and therefore, under the sections of the Constitution above set forth, the Governor has no authority for exercising a judicial function, and the statute authorizing it is void, because in contravention of the fundamental law of the State.

Section 290, of the Criminal Code of Practice, is as follows: "If judgment of death be pronounced, the day of execution thereof shall be fixed in the judgment, and shall not be less than thirty days after the judgment." Section 294: "The judgment of death must be executed by the sheriff on the day designated in the judgment between sunrise and sunset, by hanging the defendant by the neck until he is dead." These sections have been changed in certain parts of section 1137 of the Kentucky Statutes of 1903, but the change is not material to the question in hand. The following sections of the Criminal Code are important to the consideration of our inquiry:

"Sec. 293. If a judgment of death or confinement either in the penitentiary or the county jail, be pronounced, a certified copy thereof must be furnished forthwith to the sheriff, who shall thereupon execute it, and no other warrant or authority is necessary to its execution."

"Sec. 295. The only officers who shall have the power of suspending the execution of a judgment of

death are the Governor and, in cases of insanity or pregnancy of the defendant, the sheriff, as provided in the next section; and, in cases of appeals, the clerk of the court of appeals, as prescribed in title 9, chapter 1, article 1.

"Sec. 296.　If the sheriff be satisfied that there are reasonable grounds for believing that the defendant is insane or pregnant, he may summons a jury of twelve persons on the jury list, drawn by the clerk, who shall be sworn by the sheriff well and truly to inquire into the insanity or pregnancy of the defendant, and a true inquisition return; they shall examine the defendant and hear any evidence that may be presented; and by a written inquisition, signed by each of them, find as to the insanity or pregnancy.　Unless the inquisition find the defendant insane or pregnant, the sheriff shall not suspend the execution; but if the inquisition find the defendant insane or pregnant, he shall suspend the execution and immediately transmit the inquisition to the Governor."

"Sec. 346.　When a judgment of death has been affirmed, the clerk of the court of appeals shall transmit to the Governor a certificate of the affirmance and of the judgment of the circuit court, to the end that a warrant for the execution of the judgment may be issued by the Governor.　The Governor shall send his warrant of execution by a special messenger, or by mail, to the proper officer, and shall name therein the day and time of execution, but shall not appoint an earlier day than that which had been fixed upon by the circuit court.　The officer receiving the same shall report his action both to the Governor and the circuit court.　If, from any cause, the execution do not take place on the day appointed by the Governor, he may,

from time to time, appoint another day for execution, until the sentence is carried into effect.''

It is not disputed by the plaintiff that all the proceedings so far as they were had under the foregoing sections have been regular; his sole contention being that the law which authorizes the Governor to fix the day for the execution, when for any reason it has been delayed beyond the original judgment time, is void. The first question, then, with which we are confronted, is whether fixing the day of execution in a criminal case is a judicial act, which cannot be conferred by statute upon the chief executive of the Commonwealth. Certainly it was not so at common law. Blackstone, in speaking of the subject in hand, says: ''There now remains nothing to speak of but execution; the completion of human punishment. And this in all cases, as well capital as otherwise, must be performed by the legal officer, the sheriff or his deputy, whose warrant for so doing was anciently by precept under the hand and seal of the judge, and it is still practiced in the Court of the Lord High Steward, upon the execution of a peer; though, in the Court of Peers in Parliament, it is done by writ from the king. Afterwards it was established that, in case of life, the judge may command execution to be done without any writ. And now the usage is for the judge to sign the calendar, or list of all the prisoners' names, with their separate judgments in the margin, which is left with the sheriff. As for a capital felony, it is written opposite to the prisoner's name, 'Let him be hanged by the neck;' formerly, in the days of Latin, an abbreviation, 'Sus. per col.,' for 'suspendatur per collum.' And this is the only warrant that the sheriff has for so material an act as taking away the life of another. It may certainly

afford matter of speculation that in civil causes there should be such a variety of writs of execution to recover a trifling debt, issued in the king's name and under the seal of the court, without which the sheriff cannot legally stir one step; and yet that the execution of a man, the most important and terrible task of any, should depend upon a marginal note. The sheriff, upon receipt of his warrant, is to do execution within a convenient time, which in the country is also left at large. In London, indeed, a more solemn and becoming exactness is used, both as to the warrant of execution and the time of executing thereof; for the recorder, after reporting to the king in person the case of the several prisoners, and receiving his royal pleasure that the law must take its course, issues his warrant to the sheriffs, directing them to do execution on the day and at the place assigned. And, in the Court of King's Bench, if the prisoner be tried at the bar, or brought there by habeas corpus, a rule is made for his execution, either specifying the time and place, or leaving it to the discretion of the sheriff. And, throughout the kingdom, by St. 25 Geo. II, c. 37, it is enacted that, in case of murder, the judge shall in his sentence direct execution to be performed on the next day but one after sentence passed. But otherwise the time and place of execution are by law no part of the judgment." See, also, 2 Hale's Pleas of the Crown, pp. 31, 409, and 2 Hawkins' Pleas of the Crown, p. 657, note 1. So that it appears in Blackstone's time, unless a statute made the day of execution a part of the judgment, it was not so; and it was the custom for the court merely to indorse on the margin of the judgment roll, "Let him be hanged by the neck," leaving the time of execution to the discretion of the sheriff.

The case of Schwab v. Berggren, 143 U. S. 452, 12 Sup. Ct. 525, 36 L. Ed. 218, was one of the famous "Chicago Haymarket Riot Cases." Schwab was sentenced to be hung. He sued out a writ of habeas corpus in the circuit court of the United States for the Northern District of Illinois, and upon that court sustaining a demurrer to his petition he appealed to the supreme court of the United States. Among the assignments of error was that the court had in his absence fixed the day and time of his execution, and to do this was to him a denial of due process of law. In passing on this assignment of error the court said: "Nor is the question affected by the fact that the supreme court of Illinois, under an express authority conferred by statute, fixed the time when the punishment prescribed by the judgment which it affirmed should be inflicted. Neither the statute nor due process of law required that the accused should, upon the affirmance of the judgment, be sentenced anew by the trial court to suffer the punishment of death, or that he should be present when the day was fixed by the appellate court for carrying the original sentence into execution. The judgment prescribing the punishment was not vacated by the writ of error. Only its execution was stayed, pending proceedings in the appellate court. Besides, it is well settled that the time and place of execution are not, strictly, part of the judgment or sentence, unless made so by statute."

In Holden v. Minnesota, 137 U. S. 483, 11 Sup. Ct. 143, 34 L. Ed. 734, the supreme court of the United States was reviewing a judgment of the circuit court for the District of Minnesota, which denied to the accused a discharge upon a writ of habeas corpus. Holden was charged with murder in the first degree.

He had been found guilty and sentenced to be hung. The trial court refused him a new trial, whereupon he appealed to the supreme court of Minnesota. That court affirmed the court's judgment and remanded the case, and it was therein adjudged that at a time to be designated by the Governor he should be taken by the sheriff and hung. The Governor then issued his warrant, after which came the writ of habeas corpus. It was in conformity to a statute of Minnesota that all warrants for the execution of criminals were to be issued by the Governor, at a time to be fixed by him. The supreme court of the United States, in reviewing the opinion of the United States circuit court, said: "Among the assignments of error by the appellant is one to the effect that 'the judgment of the state district court that he be hanged at a time to be fixed by the Governor of Minnesota was not a valid exercise of judicial authority or due process of law thus to deprive him of life at such time as the executive should arbitrarily appoint.' We do not understand the counsel for appellant to press the point. But as this assignment of error has not been formally withdrawn, and as human life is involved in our decision, it is proper to say that under the law of Minnesota, at the time appellant committed the crime of which he was convicted, as well as when he was indicted and tried, the day on which the punishment of death should be inflicted depended upon the warrant of the Governor. It is competent for the State to establish such regulations, and they are entirely consistent with due process of law. The court sentenced the convict to the punishment prescribed for the crime of murder in the first degree, leaving the precise day of inflicting the punishment to be determined by the Governor. The order designating

Bullitt, Sheriff, v. Sturgeon.

the day of execution is, strictly speaking, no part of the judgment, unless made so by statute. And the power conferred upon the Governor to fix the time of infliction is no more arbitrary in its nature than the same power would be if conferred by the court: Whether conferred upon the Governor or the court, it is arbitrary in no other sense than every power is arbitrary that depends upon the discretion of the tribunal or the person authorized to exercise it.'' It is appropriate here to say that the statute and the Constitution of the state of Minnesota relative to the question under discussion are in all substantial respects identical with our own. In the case of State of Minnesota v. Gut, 13 Minn. 363 (Gil. 315), it was said: ''The defendant was sentenced on the 1st day of February, 1868, to be executed on the 3d day of April following, and on the 4th day of February the execution of judgment was stayed until the determination of this case in the court. The time of execution is not an essential part of the judgment. It is for the judge before whom the conviction is had to designate the time, not less than one nor more than six months, for which the convict shall be kept in solitary confinement, and at the expiration of that time it is the duty of the Governor to issue his warrant of execution. If for any reason his warrant is not issued immediately upon the expiration of the time fixed by the court for the solitary confinement of the defendant, he may afterwards issue it and cause the legal execution of the convict. In this case he may legally issue his warrant, though the day fixed in the sentence of execution has passed. We therefore affirm the judgment of the lower court and direct the sentence to be executed.''

In the case of Lowenberg v. People, 27 N. Y. 340,

the question we have here was thus disposed of: "By section 4 [Laws 1860, p. 713, c. 410] it was provided: 'When any person shall be convicted of any crime punishable with death and sentenced to suffer such punishment, he shall at the same time be sentenced to confinement at hard labor in the state prison until such punishment of death shall be inflicted.'' Section 5 declares: 'No person so sentenced or imprisoned shall be executed in pursuance of such sentence within one year from the day on which such sentence of death shall be passed, nor until the whole record of the proceedings shall be certified by the clerk of the court in which conviction was had under the seal thereof, to the Governor of the State, nor until a warrant is issued by the Governor under the great seal of State directed to the sheriff of the county in which the State prison may be situated, commanding the said sentence to be carried into execution.' That act expressly repealed section 25 of that portion of the Revised Statutes [1st Ed.), p. 659, pt. 4, c. 1, tit. 1] which declared that the punishment of death shall in all cases be inflicted by hanging the convict by the neck until he be dead. * * * Provision was made in section 18 of the act of 1860 for the execution of persons by virtue of the warrant of the Governor. * * * I am of the opinion that that part of section 11 of the portion of the Revised Statutes above mentioned which stated that the warrant for execution of the sentence of death, made out by the court, should appoint the day on which such sentence should be executed, was repealed by the act of 1860, which provided for the fixing of the time of execution, if ever, by the Governor. The designation of the time for executing the sentence by the Governor was entirely inconsistent with the appointment of

such time in the warrant for execution of the sentence made out by the court. Hence conferring authority upon the Governor to fix the day for executing the sentence necessarily took away the authority before vested in the court to appoint said day. I am of the opinion that the Court of Sessions erred in adjudging that the prisoner should suffer death on a particular day. The day on which he should be executed, if ever, should have been left for the Governor to designate.''

Fixing the time of execution in a capital case is a ministerial, not a judicial, act. Fielden v. People, 128 Ill. 595, 21 N. E. 584; In re Dyer, 56 Kan. 489, 43 Pac. 783; Cathcart v. Commonwealth, 37 Pa. 108; State v. Oscar, 13 La. Ann. 297. But it is said by the appellee that our statute (section 290 of the Criminal Code of Practice) makes the day of execution a part of the judgment in a capital case. This is true as an original proposition; but it is equally true that the same statute, when for any cause the execution cannot be carried into effect on the day named in the judgment, makes it the duty of the Governor to assign a new day. It is difficult to perceive any substantial reason for the position that, although it is competent for the Legislature to make fixing the day a part of the original judgment, it is incompetent for it to confer upon the Governor the authority to fix the day, when for any reason the execution is delayed beyond the time mentioned in the judgment. The whole matter is one of statutory enactment, the Legislature having the power under one set of circumstances to authorize the court to fix the day, and under another to authorize the Governor to fix the day; in other words, the naming of the day for execution is not a judicial function inherent in the court,

within the meaning of the Constitution, which forbids either of the other co-ordinate powers of government to exercise judicial functions.

Prior to the enactment of the Code of 1854 there was no appeal from the judgments of the circuit court in criminal cases. This right was given for the first time in the history of our State by that Code, and it has remained as a part of the criminal law ever since. All of the provisions concerning the question in hand, which are in the present Code, were in that of 1854. Having given the criminal the right to appeal from a death sentence, the Legislature, in 1854, enacted the same provisions which are called in question here, that the Governor, after the affirmance by the Court of appeals, should, upon the certificate of the clerk of this court, fix another day for the execution, and that law has been upon the statute books and continuously enforced ever since. The provisions concerning the distribution of the powers of government, contained in our present Constitution, are identical with those contained in the third Constitution enacted in 1851. The Legislature, in 1854, construed that it was competent to confer upon the Governor the power of fixing the new day for the execution of a criminal, when for any reason the time set in the judgment has passed without execution; and this construction of this constitutional power was continuously enforced from 1854 until the meeting of the constitutional convention in 1891. With the construction which the Legislature had placed upon the constitutional provisions with reference to the distribution of the powers of government in the Constitution of 1851 before them, the members of the constitutional convention of 1891 readopted those provisions without change. It is hardly necessary to state that

among the members of the last constitutional con-, vention were many of the most learned lawyers of the State, all of whom were familiar with the legis- lative construction of the language distributing the powers of government under the former Constitution, and, so knowing, they re-enacted this language, and with it, of necessity, the construction which had there- tofore been placed upon it.

There is no imperative reason for fixing a day for the execution of the criminal in the judgment. As we have seen, at common law this was generally left to the discretion of the sheriff; and while the practice of fixing a day certainly must be approved as an orderly procedure for the enforcement of the process of the court in this most important and solemn line of cases, yet in other criminal cases no time is fixed for the sentence of the court to be carried into execu- tion, this being left to the discretion and convenience of the sheriff. If the appellee had been sentenced to confinement in the penitentiary for life, the judgment would have contained no date for the judgment to be carried into execution. This would have been left entirely, as said before, to the convenience of the sheriff—of course, subject to the supervision of the court or the Governor, or perhaps both, if there was any unnecessary or undue delay in carrying the judgment into execution. So that the time in which the judgment is to be executed in criminal cases is not fixed in the judgment in any other than cases where the death penalty is inflicted. This could not be so if fixing the time of the execution were part of the judgment. We do not understand why, if it is competent that the time of carrying into execution the judgments in criminal cases may be left to the sheriff, as we have seen, in all instances except where

the death penalty is inflicted, the time of fixing the day of death penalty may not under certain circumstances be confided to the chief magistrate of the Commonwealth. It will be observed that, by the terms of section 296 of the Criminal Code of Practice, if the sheriff be satisfied there are reasonable grounds for believing that the defendant is insane or pregnant, he may summon a jury and try the question, and, if the inquest finds the defendant insane or pregnant, the sheriff shall suspend the execution and immediately transmit the inquest to the Governor. Here we find the sheriff invested with the power of trying the question as to whether or not the judgment of the court shall be carried into effect. If this judicial, or quasi-judicial, power can be conferred upon the sheriff, certainly there can be no reason for withholding from the Governor the power to fix the date of execution in a capital case.

It is insisted for the appellant, Bullitt, that the authority of the Legislature to confer upon the Governor the right to fix a day of execution in a capital case may be found in those sections of the Constitution which authorize him to pardon, commute, or reprieve criminals, and make it his duty to see that all laws of the Commonwealth are properly enforced. We do not think it necessary to discuss the question from this point of view. The Constitution of the State is not a delegation of powers, but is a limitation; and therefore, wherever it has not limited the right of the Legislature, either expressly or by necessary implication, then that body has the right to legislate. Having reached the conclusion that the Constitution does not limit the power of the Legislature to authorize the Governor in the matter under discussion here, it follows that we are not required

Bullitt, Sheriff, v. Sturgeon.

to seek any express authority in the General Assembly so to do. So that, whether we view this question from the point of reason, or from that of authority, or from the point of view of long usage and contemporaneous construction, we are constrained to the conclusion that the statute called in question is constitutional.

We do not discuss the competency of the writ of injunction to delay a public execution, not desiring to rest so grave a matter upon a mere mode of procedure. The chancellor evidently thought the question raised upon the application should be passed upon by the Court of Appeals, and in this view we concur, and have, therefore, discussed the question upon the merits, rather than upon the technical right to issue an injunction.

For these reasons, the injunction granted is dissolved, and the clerk of this court is directed to certify our conclusion to the Governor, in order that he may designate another day for the execution of the defendant as by the statute required.