No. 36,926

THE STATE OF KANSAS, *Appellee*, v. GEORGE MILLER, *Appellant*.

(217 P. 2d 287)

Opinion filed April 8, 1950.

*Edward Rooney,* of Topeka, argued the cause for the defendant.

*Charles H. Hobart,* assistant attorney general, argued the cause for the state.

The opinion of the court was delivered by

PARKER, J.: This is a concluding if not the final chapter of a criminal prosecution for murder. It is here on motion by the state to reset the date for execution of the defendant who has been sentenced to death by hanging on his plea of guilty to the crime of murder in the first degree and a motion by the confessed murderer to dismiss the state's motion on the ground this court is without jurisdiction to either hear or sustain it.

The story of the tragedy herein involved and resulting in the death of one man and in the sentencing of another to die upon the gallows is already spread at length upon the pages of our reports (*Miller v. Hudspeth,* 164 Kan. 688, 192 P. 2d 147, and *State v. Miller,* 165 Kan. 228, 194 P. 2d 498). For our purposes all that is required is to state that on the morning of February 3, 1947, the defendant, with premeditation and without lawful excuse shot and killed M. F. (Mike) Churchill, the chief of police of the city of Osawatomie and a respected peace officer of this state, while the latter in the proper performance of his duties under the law, was attempting to arrest him for a violation of one of the ordinances of such city. After fleeing the scene of the homicide defendant was finally apprehended and charged in the district court of Miami county with the crime of murder in the first degree. There, after a full explanation of his rights under the law and while represented by counsel of his own choosing, he entered a plea of guilty to murder as charged in the information and on such plea was eventually sentenced to die by hanging in the state penitentiary at Lansing between the hours of 5:00 a. m. and 6:00 a. m. of May 2, 1947. If desired the foregoing factual statement can be supplemented by reference to the opinions of the two decisions to which we have heretofore referred.

Nor is it necessary to detail the proceedings had in this cause up to the time defendant's application for a writ of habeas corpus was denied in *Miller v. Hudspeth,* supra, or his appeal from the district court's judgment affirmed in *State v. Miller,* supra. It suffices to say that resort to the opinions of those cases will reveal that this court not only stayed defendant's execution during the pendency of his appeal until further orders but, because it was called to its

attention he was poor and illiterate and suggested—erroneously as later developed—his sentence to pay the extreme penalty imposed by law was influenced by racial prejudice, went to extreme lengths in seeing to it that none of the rights guaranteed him as a citizen under the federal and state constitutions had been violated in the trial court.

Events transpiring subsequent to those heretofore mentioned are material to the issues now involved and hence require specific and more detailed attention.

Following affirmance of the appeal in *State v. Miller*, supra, this court, on July 9, 1948, pursuant to its statutory duty (see G. S. 1935, 62-2414), caused its clerk to issue a warrant to the warden of the Kansas state penitentiary, directing that official to proceed between the hours of 1:00 a. m. and 7:00 a.m. on August 18, 1948, to carry into execution the sentence of death theretofore imposed upon the defendant.

August 13, 1948, just five days before the date set by this court for defendant's execution, the Honorable Frank Carlson, governor of Kansas, by executive order, granted him a reprieve and stayed his execution until further orders. In substance the governor's order states the reprieve was granted in order to allow defendant adequate time in which to prepare and present an application for executive clemency in conformity with article 1, section 7, of the state constitution and G. S. 1947 Supp. 62-2216.

On or about the 1st day of November, 1948, defendant instituted a proceeding for a writ of habeas corpus in the United States District Court for the district of Kansas predicated generally on the ground that he was convicted and sentenced in the courts of the state of Kansas in violation of due process of law as guaranteed by the United States Constitution. December 13, 1948, the Honorable Arthur J. Mellott, judge of such district court, found the defendant's claims were unfounded and denied the writ but did stay execution of the death sentence imposed upon him by the Miami county district court pending any appeal he might take from the judgment to the United States Court of Appeals for the Tenth Circuit.

January 13, 1949, the Governor of Kansas terminated and canceled the reprieve theretofore granted the defendant by written instrument, directed to the warden of the Kansas state penitentiary, wherein such official was advised of his action and authorized to proceed in due course, and with due diligence, to execute the judgment

and sentence of the Miami county district court, as reviewed, and affirmed by this court, whenever the restraining or injunctive order of the United States issued against him was set aside.

Defendant's appeal from the judgement of the United States District Court, was heard in due course by the United States Court of Appeals, Tenth Circuit, and on July 5, 1949, that tribunal affirmed the judgment of the trial court in which defendant's application for a writ of habeas corpus was denied. The opinion of such decision, reported in *Miller v. Hudspeth*, 176 Fed. 2d 111, and written for the court by the Honorable Walter A. Huxman, circuit judge, reviews at length the factual situation leading up to the defendant's conviction and sentence and in succinct and comprehensive language sets forth the court's reasons for concluding that he had not been deprived in the courts of the state of Kansas of any right guaranteed him by the due process clause of the federal constitution.

The mandate from the United States Court of Appeals, Tenth Circuit, affirming the judgment of the United States District Court has been spread of record. Defendant took no appeal from such judgment and his time for doing so has expired. The result is the appeal referred to in the district court's order of December 13, 1948, has been heard and finally determined and its order staying the defendant's execution during the pendency of such appeal in the circuit court is no longer in force and effect.

It should perhaps be added that defendant at no time made any attempt to obtain a review of the judgment rendered by this court in *State v. Miller*, supra, in the Supreme Court of the United States and that it is now too late for him to do so.

With what has been heretofore stated we are now able to determine the merits of the motions filed by the respective parties.

Stripped of excess verbiage defendant's position with respect to the plaintiff's motion, as well as his own, is that since the date set by this court for his execution has passed without the sentence of death being executed it now has no authority to see to it that such sentence is carried out. Otherwise stated the sum and substance of his claim is that his success in putting off execution of his sentence until after the date fixed by the court furnishes him with permanent immunity from execution and has the result of nullifying the judgment and sentence theretofore imposed upon him. That we have not overstated the import of his claim, is evidenced by an excerpt from his own motion wherein he states: "The legislature gave no-

body the power to re-fix the date of execution when the United States Court suspended it and the State should not be now permitted to guess whether the legislature wanted the United States Court to re-fix the date of execution or whether the legislature, if it had acted, would have appointed and directed the Supreme Court, the District Judge or the Governor to fix it."

Defendant has failed to cite authorities supporting his position. It has been said that under such circumstances (see *McCoy v. Fleming,* 153 Kan. 780, 783, 113 P. 2d 1074) this court might well conclude that his counsel, after diligent search, have been unable to find any. Even so, we are not disposed to here invoke that rule. However, it can be said that after a painstaking examination of the decisions we have failed to find a single case that does so. Without regard to who has the duty of fixing the date the authorities uniformly hold that failure to execute a death warrant on the date fixed does not result in immunity to or discharge of a person sentenced to die but requires the fixing of a new date for his execution.

Decisions supporting the foregoing statement are so numerous that limits of time and space will not permit detailed reference to all those to which we have given attention in our research. However, a few of those particularly applicable will be mentioned and briefly discussed.

In *Ex Parte Howard,* 17 N. H. 545, it was held:

"The time designated by the court for executing a sentence of death is not a part of the sentence. It is simply an order prescribing the time when the sentence shall take effect.

"A postponement of the time of execution by a reprieve, does not, therefore, affect the sentence. It remains to be enforced at the end of the period of respite, or by a new order, if no other disposition has been made of the case." (Syl.)

Close in point, from the standpoint of both facts and procedure, and therefore highly significant is *McLaurin v. State,* (Miss.) 41 So. 2d 41, holding that where on affirmance of conviction of murder and sentence to death by electrocution, a date was fixed for such execution but thereafter a stay was granted pending disposition of a petition for a writ of certiorari to the Supreme Court of the United States, and the petition was denied, and the date originally set for execution of the sentence had passed, the state's motion that a new date be set for the execution would be granted. The same is true of *Simmons v. State,* 197 Miss. 326, 21 So. 2d 822;

*Gore v. Humphries,* 163 Ga. 106, 135 S. E. 481; *Fickling v. Dixon,* 168 Ga. 274, 147 S. E. 524.

*Simmons v. Fenton,* 113 Neb. 768, 205 N. W. 296, holds that where a defendant in a criminal action has been legally sentenced to death and has not been executed at the time fixed in the death warrant, he is not entitled to be discharged from custody on habeas corpus, but a new date for the execution may be fixed by the proper court, even though and regardless whether reprieves granted him and resulting in his not being executed on the date set were wholly void and unauthorized by law.

See, also, *State v. Green,* 88 Utah 491, 55 P. 2d 1324, holding that a judgment or sentence of death is not set aside or invalidated by the issuance of a governor's reprieve and the only effect of such reprieve was one of delay, making necessary the fixing of another date for execution of judgment.

In *Fowler v. Grimes,* 198 Ga. 84, 31 S. E. 2d 174, it is said that one sentence is all that is ever imposed in a capital case which is to be executed either at the time fixed therein or at such other time as the judge shall fix thereafter and that what is commonly referred to as a "resentence" is only the fixing of a new time for execution of the original sentence.

To the same effect is *Ex parte Washington,* 32 Okla. Cr. 388, 241 Pac. 349.

For cases holding the act of a court in fixing the date for execution of a defendant convicted of murder is ministerial and no part of the sentence proper or judgment of conviction and hence that the refixing or resetting of the time for execution, where for any reason the judgment of death has not been executed, is also ministerial, see *State v. Haddox, Warden,* 50 W. Va. 222, 40 S. E. 387; *Ex parte Grayson* (Okla.), 187 P. 2d 232; *Rose v. Commonwealth,* 189 Va. 771, 55 S. E. 2d 33.

See, also, *Cross v. Burke,* 146 U. S. 82, 36 L. Ed. 896, 13 S. Ct. 22 and *In re Cross,* 146 U. S. 271, 36 L. Ed. 969, 13 S. Ct. 109, where William Douglas Cross was seeking to avoid the execution of a death sentence because of circumstances somewhat similar to those here involved and it was held, that notwithstanding, his sentence of death remained in force and it was the duty of the court to assign a new day for his execution.

The failure, for any reason, of an officer to execute a death warrant at the time fixed by its terms does not vitiate the sentence of

death but simply requires the fixing of a new date on which it is to be carried out. See *The State v. Kindred Kitchens,* 16 S. C. (Old Series) 276; *Mallory v. Chapman,* 158 Ga. 228, 122 S. E. 884; *State v. Cardwell,* 95 N. C. 643. Perhaps the best illustration of what has just been stated appears in the now celebrated Willie Francis case. Francis was convicted of the crime of murder and was sentenced to suffer the penalty of death. A warrant was issued directing the sheriff to execute the sentence on May 3, 1946. On that date the sheriff undertook to execute the warrant by electrocution. Francis was placed in the chair and an attempt was made to electrocute him. The machine failed to function properly and he was removed from the chair. Thereafter the governor of Louisiana granted him a reprieve to May 9, 1946. The day before the expiration of such reprieve he filed an action in the Supreme Court of Louisiana asking that he be released from custody. Because the action could not be decided by May 9, he was granted a further reprieve of not more than thirty days. May 15, 1946, the supreme court of Louisiana decided (*State v. Resweber,* 212 La. 143, 31 So. 2d 697) that the unsuccessful attempt to electrocute him on the date fixed in the original death warrant did not constitute an execution of the sentence or grant him immunity and refused to grant a writ of habeas corpus. Francis then applied to the United States Supreme Court for certiorari, which was granted on June 10, 1946, on which date the court stayed his execution pending its decision (*Louisiana v. Resweber,* 328 U. S. 833, 90 L. Ed. 1608, 66 S. Ct. 1382). On January 13, 1947, the United States Supreme Court affirmed the judgment of the Supreme Court of Louisiana (*Louisiana v. Resweber,* 329 U. S. 459, 91 L. Ed. 422, 67 S. Ct. 374). February 10, 1947, it denied a motion for rehearing and vacated its order of June 10, 1946, staying execution (*Louisiana v. Resweber,* 330 U. S. 853, 91 L. Ed. 1295, 67 S. Ct. 673). Thereafter Francis was electrocuted as required by the terms of the original judgment and sentence. While the opinions of the decisions just mentioned do not disclose who fixed the date for his execution they do definitely determine that under the conditions therein involved it was the duty of some duly constituted authority to fix a new date for execution of his sentence.

No one of the decisions to which we have referred covers the entire field but when carefully analyzed each will be found to support the established general rule which is well stated in 24 C. J. S. 166, § 1614, as follows:

"The fact that the day of execution has passed without the sentence of death being executed because of the death or illness of the sheriff, because of his neglect to execute the warrant, because the court granted a postponement of the execution on the application of accused, or because accused has obtained a writ of error or taken an appeal to an appellate court, does not entitle accused to his discharge, and the court may, either with or without a new sentence, designate another day for the execution of the sentence. This is a mere fixing or resetting of the date of execution under the original judgment, and is not the pronouncement or rendition of a new judgment. The validity of a resentencing order is immaterial, if the original sentence is still in full force and effect, and it has been held that, although a reprieve order is void and the date for execution has passed, accused is not entitled to his discharge, but the court should fix a new date for the execution."

A similar statement is to be found in 15 Am. Jur. 162, 163, § 513. It reads:

"It is well settled that permitting the day fixed for execution to pass without carrying out the sentence has the effect of furnishing only temporary immunity from execution. The sentence of death still remains, and a new day may be appointed to carry out the sentence. If the date fixed is allowed to pass for any cause, for instance, the pendency of an appeal or a writ of error, a new date may be set for the execution. If a convict sentenced to death escapes before the day fixed for his execution or if the execution is prevented by accident from being carried out, the judgment remains and may be carried out by fixing a new date. Failure of a sheriff, warden, or other person commissioned to carry out the sentence of death on the day fixed, whether due to forgetfulness, inadvertance, or wilful neglect of duty, does not discharge the prisoner. A new day may be set for the execution. The right to set a new date for execution is not lost by suspending sentence of death on a certain day where the convict becomes insane or a female prisoner is pregnant. A reprieve does not defeat the sentence of execution, but merely postpones the date."

See, also, 15 Am. Jur. 110, § 450, which states:

"Generally, the date fixed by a sentence for the punishment to commence is not regarded as a part of the sentence, and if for any reason the sentence is not carried into effect at the prescribed time, the accused may be brought before the court on motion, and a new period designated. Likewise, on the lapse of the day fixed for the execution of a sentence of death, without the sentence being carried into effect, a new day must be fixed for the execution."

Other decisions examined and found to support some one or more of the fundamental principles within the scope of the general rule as heretofore quoted are *People v. Frost*, 119 N. Y. S. 857; *Bullitt, Sheriff, v. Sturgeon*, 127 Ky. 332, 32 Ky. L. 215, 105 S. W. 468; *People v. Sloper*, 198 Cal. 601, 246 Pac. 802; *Henry v. Reid*, 201 La. 857, 10 So. 2d 681; *Smith v. Henderson*, 190 Ga. 886, 10 S. E. 2d 921; *Solesbee v. Balkcom*, 205 Ga. 122, 52 S. E. 2d 433; *State ex rel.*

*Johnson, Dist. Atty., et al. v. Alexander et al.*, 87 Utah 376, 49 P. 2d 408; *People v. Righthouse*, 10 Cal. (2d) 86, 72 P. 2d 867; *State v. Brown* (Mo.), 112 S. W. 2d 568; *State v. Wright* (Mo.), 112 S. W. 2d 571; *Commonwealth v. Hill*, 185 Pa. 385, 39 Atl. 1055; *Matter of Buchanan*, 146 N. Y. 264, 40 N. E. 883.

Still more can be found by reference to Am. Dig. System, Criminal Law, §§ 1003, 1219; 34 A. L. R. Anno. 314.

Having definitely established that defendant's sentence is still in force and effect it then becomes necessary for us to determine who has the duty of seeing to it that the judgment and sentence is carried out by fixing a new date for his execution. That question depends, of course, upon the laws of this state. We pause to add that its decision has been held to be purely a question of state policy, involving no infraction of the United States Constitution (*Lambert v. Barrett*, 159 U. S. 660, 40 L. Ed. 296, 16 S. Ct. 135; *Rogers v. Peck*, 199 U. S. 425, 50 L. Ed. 256, 26 S. Ct. 87).

In support of his motion to dismiss the state's motion defendant directs our attention to the fact that when a death sentence has been imposed and a date of execution fixed a new date may be fixed by the trial court, under the provisions of G. S. 1935, 62-2406 and 62-2407, in cases where it has been called to its attention that a person condemned to die appears to be insane and his sentence has been suspended by such tribunal on that account. Also that G. S. 1935, 62-2409 and 62-2410, authorizes the district court to refix the death sentence of a woman whose sentence has been stayed by it because of pregnancy. He also directs attention to G. S. 1935, 62-2411, providing that upon the escape of a person under sentence of death the governor shall appoint a day for his execution if he is not apprehended until after the date originally fixed for his execution.

It is urged that the foregoing provisions of the statute, insofar as they relate to the situations therein mentioned, have application both before and after appeals to this court from judgments and sentences of district courts of the character here involved. We are convinced they apply only to situations where there has been no appeal from such judgments. So far as trial courts are concerned the question has been definitely determined. In *State v. Brady*, 156 Kan. 831, 843, 137 P. 2d 206, we said:

"It follows that even if there were force in appellant's contention that the trial court was without power to fix the date of execution, the matter is now in the hands of this court, which has not only the power but the unpleasant duty of doing so." (p. 843)

We see no reason for giving the provisions of G. S. 1935, 62-2411, any broader application and hold that it too has application only to situations arising prior to perfection of appeals to this court from judgments in capital cases.

It is to be noted the sections of the statute just mentioned precede G. S. 1935, 62-2414, which reads:

"In case the supreme court, or any judge thereof, shall order a suspension of the execution of sentence, the suspension shall continue until the proceedings are determined, and after determining the same, *if the sentence be confirmed, said court shall appoint a day certain for and order the execution of said sentence,* it shall be the duty of the clerk of said court to issue to said warden his warrant under the seal of said court, commanding him to proceed to carry said sentence into execution, *at the time so appointed by the court, which time shall be stated in said warrant;* and upon receipt of said warrant it shall be the duty of said warden to cause said sentence to be executed as herein provided, at the time so appointed by the court, and to make due return of said warrant, and of his proceedings thereunder, forthwith to the clerk of the district court before which the conviction was had, who shall cause the same to be recorded as a part of the records of the case." (Emphasis supplied.)

In addition G. S. 1935, 62-1720, provides:

"On a judgment of affirmance against the defendant, the original judgment must be carried into execution as the appellate court may direct."

When the two foregoing sections of the statute are considered together it seems clear that they not only give power, but make it the duty of this court, under the factual situation heretofore related, to fix a new date for the execution of the defendant and we so hold. Indeed, in the absence of a plain mandate we would be compelled to reach a like conclusion. Courts have inherent power to enforce their own judgments and should see to it that they are enforced when—as here—they are called upon to do so (see *State v. Brady,* supra, page 841; 21 C. J. S. 136, § 88; 14 Am. Jur. 370, § 171; 31 Am. Jur. 363, § 882).

In the instant case all parties concede the judgment and sentence of the district court of Miami county as affirmed by this court in *State v. Miller,* supra, has not been complied with and that there has been no commutation of the sentence under the provisions of G. S. 1947, Supp. 62-2216. It follows that we have the unpleasant duty of again fixing a date for the defendant's execution. Therefore an appropriate order will be made in due course to carry his sentence into execution.

The defendant's motion to dismiss is denied and the state's motion to reset a date for his execution is sustained.