No. 95-161

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

STATE OF MONTANA,

    Plaintiff and Respondent,

-vs-

DUNCAN PEDER McKENZIE,

    Defendant and Appellant.

FILED

APR 20 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Thomas M. McKittrick, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Gregory A. Jackson, Jackson & Rice, Helena, Montana;
Timothy K. Ford, MacDonald, Hoague & Bayless,
Seattle, Washington

    For Respondent:

        Hon. Joseph P. Mazurek, Attorney General, Pamela P.
Collins, Assistant Attorney General, Helena, Montana

Submitted on Briefs: April 11, 1995

Decided: April 20, 1995

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

Duncan Peder McKenzie, appeals from an order of the Eighth Judicial District Court, Cascade County, denying his request to consider his objections to the resetting of his execution date and issuing a death warrant. This Court granted the State's motion to dismiss McKenzie's appeal, in an order dated April 11, 1995. Pursuant to the April 11, 1995 order, this opinion follows.

The issues before this Court are:

1.   Whether McKenzie has a right to appeal the District Court's resetting of the execution date?

2.   Whether the District Court has jurisdiction to set an execution date after an earlier execution date has expired?

3.   Whether the District Court had jurisdiction to hear McKenzie's substantive arguments regarding the resetting of the execution date?

PROCEDURAL BACKGROUND

In January, 1975, Duncan McKenzie was convicted of deliberate homicide and aggravated kidnapping in the Eighth Judicial District Court, Cascade County. McKenzie was sentenced to death for these convictions on March 3, 1975. The facts underlying McKenzie's conviction and sentencing are fully set forth in State v. McKenzie (1976), 171 Mont. 278, 577 P.2d 1023, and will not be repeated here. McKenzie has challenged his conviction and sentence in numerous state and federal proceedings, none of which has been ultimately successful on the merits. McKenzie's death sentence has been stayed at least eight times since its imposition. The most recent stay of execution entered in November of 1988, was dissolved by the United States District Court for the District of Montana on February 23, 1995. The following provides a brief review of the

2

procedural history of this case.

In McKenzie's first state proceeding, this Court affirmed McKenzie's direct appeal of his conviction. State v. McKenzie (1976), 171 Mont. 278, 577 P.2d 1023. In 1980, after two remands by the United States Supreme Court for reconsideration by this Court, we affirmed McKenzie's conviction. State v. McKenzie (1980), 186 Mont. 481, 608 P.2d 428.

On January 5, 1981, McKenzie filed a petition for post-conviction relief in state district court. The District Court denied the petition, and this Court affirmed that court's ruling. McKenzie v. Osborne (1981), 195 Mont. 26, 640 P.2d 368. McKenzie then filed a petition for writ of habeas corpus in federal district court, which was resolved against him seven years later. McKenzie v. Risley (9th Cir. 1988), 842 F.2d 1525, cert. denied, 488 U.S. 901 (1988). McKenzie petitioned the United States Supreme Court for a writ of certiorari, which the Court denied on October 11, 1988. McKenzie v. McCormick (1988), 488 U.S. 901.

McKenzie then filed his second petition for writ of habeas corpus with this Court. We denied that petition on April 16, 1985, in an unpublished order. On June 27, 1985, McKenzie filed his second habeas petition in federal court which the federal district court denied. The Ninth Circuit affirmed the federal district court's denial, McKenzie v. McCormick (9th Cir. 1994), 27 F.3d 1415, and also denied McKenzie's petition for rehearing en banc. On January 17, 1995, the United States Supreme Court denied McKenzie's petition for writ of certiorari. The Court also denied McKenzie's request for a rehearing of the denial of certiorari.

On February 23, 1995, the United States District Court for the

3

District of Montana ordered that the stay of execution granted in 1988, during the pendency of McKenzie's second petition for writ of habeas corpus, be vacated and dissolved. There being no stays of execution in effect, the State moved the Eighth Judicial District Court, Cascade County, for a hearing to reset the execution date.

Prior to the hearing on this matter, McKenzie filed "Defendant's Objections to Request for Execution Date" and supporting memorandum. McKenzie raised several arguments in this document including the argument that the court did not have jurisdiction, and that the hearing to reset the execution date was a hearing to "reimpose the death sentence." The District Court held a hearing on March 27, 1995, and overruled all of the objections McKenzie raised in his "Memorandum Supporting Objections to Execution Setting."

The District Court found that its act in resetting the execution date was merely a procedural and ministerial act, and proceeded with the hearing to set the execution date. The court set the execution date for May 10, 1995, and issued a death warrant.

McKenzie filed a notice of appeal seeking to invoke this Court's appellate jurisdiction over the District Court's rulings. The State moved to dismiss the appeal on the grounds that McKenzie had no right of appeal because there is no appealable order which would give rise to this Court's appellate jurisdiction. We ordered that the matter be fully briefed and, after careful consideration of the parties' arguments, issued an order granting the State's motion to dismiss on April 11, 1995.

DISCUSSION

4

## 1. RIGHT OF APPEAL

The State contends that McKenzie has no right of appeal because under Montana law, "[a]n appeal may be taken by the defendant only from a final judgment of conviction and orders after judgment which affect the substantial rights of the defendant." Section 46-20-104(1), MCA. The State argues that the order resetting the execution date did not affect McKenzie's substantial rights; rather, the court merely executed the March 3, 1975 judgment. The State also maintains that the order resetting the execution date is not a judgment or sentence. We agree.

Courts have long recognized that setting an execution date is a ministerial and not a judicial act. See, State v. Joubert (Neb. 1994), 518 N.W.2d 887, 895; Pate v. State (Okla.Crim. 1964), 393 P.2d 247; State v. Miller (Kan. 1950), 217 P.2d 287; Rose v. Commonwealth (Va. 1949), 55 S.E.2d 33. As stated by one court:

> The refixing or resetting of the time for execution, where for any reason the judgment of death has not been executed, is a merely ministerial act, which, at common law, as we have seen, generally devolved upon the sheriff, but which under our statute devolves upon the court in which the conviction was had.

Pate, 393 P.2d at 249.

In resetting the execution date, the District Court was merely performing a ministerial function, i.e., carrying out the March 3, 1975 judgment which sentenced McKenzie to death. McKenzie's substantial rights were not implicated by this proceeding, accordingly, the District Court's order resetting the execution date is not an appealable order.

We also conclude that the District Court's order resetting the execution date cannot be defined as an appealable judgment. Under

5

Montana law, a judgment is defined as "an adjudication by a court that the defendant is guilty or not guilty, and if the adjudication is that the defendant is guilty, it includes the sentence pronounced by the court." Section 46-1-202(10), MCA. In addition, other courts have recognized that: "the order fixing or resetting the date of execution under the original judgment is not a new judgment, and from such order no appeal lies." Pate, 393 P.2d at 250.

Here, the District Court did not "resentence" McKenzie nor did it "reimpose" the death penalty. It merely executed the judgment before it. McKenzie was "sentenced" and the death penalty was "imposed" on March 3, 1975; that sentence has never been vacated by any court.

Finally, we note that the District Court would not have jurisdiction to vacate the original judgment sentencing McKenzie to death, and grant his request for a sentence of life imprisonment, because, once a valid judgment and sentence has been signed, the court imposing the sentence lacks jurisdiction to vacate or modify it except as provided by law. State v. Hanners (1992), 254 Mont. 524, 526, 839 P.2d 1267, 1268. We conclude that there is no provision in the law which would allow the District Court to amend, at the hearing resetting the execution date, the original judgment of 1975 sentencing McKenzie to death.

## 2. JURISDICTIONAL ARGUMENT

McKenzie argues that the District Court did not have jurisdiction to reset the execution date because the law in effect at the time he was sentenced had no provision for the resetting of the execution after the statutory time for execution had passed.

6

The law in effect at the time McKenzie was originally sentenced provided that: "[i]n pronouncing the sentence of death, the court shall set the date of execution which must not be less than thirty (30) days nor more than sixty (60) days from the date the sentence is pronounced." Section 95-2303(b), RCM (1947), as amended (later recodified as § 46-19-103, MCA). Therefore, according to McKenzie, at the time he was sentenced, an execution had to be conducted within the sixty-day time frame, and the court had no power to reset the execution date if the sixty days elapsed.

However, in 1981, § 46-19-103(1), MCA, was amended to provide that a court shall set a new execution date upon dissolution of a stay of execution. According to § 46-19-103(1), MCA, the District Court has a mandatory duty to set a new execution date, and has no discretion to do otherwise.

Because we have previously concluded that the order resetting the execution date was merely a procedural or ministerial act and, thus, McKenzie's substantial rights were not thereby affected, the controlling law is that law in effect at the time of the court's resetting the execution date. See, State v. Coleman (1979), 185 Mont. 299, 605 P.2d 1000. Therefore the District Court acted correctly in setting the execution date pursuant to § 46-19-103(1), MCA.

In addition, we find no merit to McKenzie's argument that once the initial execution date has passed, the District Court has no authority to reset the date. Other courts have recognized that "the failure to execute a death warrant on the original date fixed does not result in the discharge of a prisoner sentenced to die, but requires the court to fix a new date for the execution."

7

Joubert, 518 N.W.2d at 891.

As stated by the Kansas Supreme Court in Miller, 217 P.2d at 290, "the authorities uniformly hold that failure to execute a death warrant on the date fixed does not result in immunity to or discharge of a person sentenced to die, but requires the fixing of a new date for his execution."

McKenzie also claims that the District Court did not have jurisdiction to reset the execution date pursuant to § 3-1-804(b), MCA, which provides in part: "[t]he first district judge who has been substituted or disqualified for cause shall have the duty of calling in all subsequent district judges." McKenzie argues that Judge McKittrick did not have jurisdiction because the original presiding judge or his successor, did not enter an order conferring jurisdiction on Judge McKittrick.

McKenzie also points to this Court's order of March 14, 1976, as authority for the proposition that McKittrick lacked jurisdiction to reset the execution date. McKenzie's argument is based on the following procedural background.

This case arose in Pondera County, in the Ninth Judicial District before Judge R.D. McPhillips. McKenzie subsequently disqualified McPhillips by substitution. McPhillips called in Judge Robert J. Nelson of the Eighth Judicial District Court to assume jurisdiction of the case, and Judge Nelson moved the cause to Cascade County for the purposes of trial. Thereafter McKenzie was found guilty of deliberate homicide and aggravated kidnapping, and Judge Nelson imposed the death penalty. The execution date was

8

set for April 30, 1975, however it was stayed pending appeal to this Court.

After remittitur, Judge Nelson's term had expired and Judge William H. Coder succeeded Judge Nelson as a judge in the Eighth Judicial District Court. Coder issued an order resetting the execution date on the basis of the sentence previously pronounced by Judge Nelson.

In our March 14, 1976 order we concluded that Judge Coder did not have jurisdiction to reset the execution date. We held that before a district court judge could reset the execution date, the cause had to be returned to the original presiding judge in Pondera County. That judge was required to call in another district judge to continue with jurisdiction of the case.

At the time we issued that order, however, § 46-19-103(1), MCA (1993), was not in effect. The relevant portion of that statute, which controls here, provides that "the court in which the defendant was previously sentenced shall, upon dissolution of the stay, set a new date of execution . . ." McKenzie was properly sentenced by Judge Nelson, a judge in the Eighth Judicial District Court. Judge McKittrick is a judge in the Eighth Judicial District Court, the "court in which the defendant was previously sentenced." Accordingly, Judge McKittrick has the statutory authority under § 46-19-103(1) and (4), MCA, without more, (as would any other district judge in that District) to perform the ministerial act of setting an execution date and signing the death warrant.

Moreover, we conclude that § 3-1-804, MCA, which controls the substitution of district court judges, is not applicable. Rather, § 46-19-103(1) and (4), MCA, governs, and it reposes the act of

9

setting the execution date and signing the death warrant in the court in which the defendant was sentenced--here the Eighth Judicial District Court. Therefore, our order indicating the original presiding judge in Pondera County must appoint another district court judge before the court may set a new execution date is not controlling.

## 3. SUBSTANTIVE CLAIMS

McKenzie's substantive claims are not properly before this Court on appeal. The District Court concluded that the hearing to reset the execution date was a procedural and ministerial act. The hearing was not a resentencing and Judge McKittrick had no jurisdiction to consider McKenzie's substantive claims relating to the death penalty sentence itself. Likewise, those claims are not properly before this Court on appeal.

_____
                                    Justice

We Concur:

_____
        Acting Chief Justice

_____

_____
                    Justices

_____
Hon. Ted L. Mizner, District Judge
sitting for Chief Justice Turnage

10

_____
Hon. Ed P. McLean, District Judge
sitting for Justice Terry N.
Trieweiler

11

Justice W. William Leaphart, dissenting.

I dissent from the Court's dismissal of this appeal.

I would remand the case to the District Court for consideration of appellant's contention that 20 years on death row constitutes cruel and unusual punishment under the 8th Amendment to the United States Constitution and Article II, Section 22 of the Montana Constitution. This is an issue which at least two of the Justices on the United States Supreme Court recently indicated would "benefit from further study" by the lower state and federal courts. Lackey v. Texas, United States Supreme Court, No. 94-8262 (March 27, 1995) (Justices Stevens and Breyer). While noting that such a claim is "novel," the two Justices commented that it is "not without foundation." They also noted that:

> Though the importance and novelty of the question presented by this certiorari petition are sufficient to warrant review by this Court, those factors also provide a principled basis for *postponing* consideration of the issue until after it has been addressed by other courts. [Emphasis added.]

The *Lackey* case involves a defendant who has been on death row for 17 years. Justices Stevens and Breyer suggest that, before the Court can properly determine the merits of this argument, the lower courts must first make a determination as to how much of that 17-year time period is attributable to petitioner's abuse of the judicial system through repetitive, frivolous filings and how much, if any, is attributable to prosecutorial or institutional delay. McKenzie, as of this date, has been under a death sentence since 1975--some 20 years. During the course of that 20-year period,

12

McKenzie has pursued numerous appeals and petitions before this Court, the Ninth Circuit Court of Appeals and the United States Supreme Court. At this juncture, we have no findings by the trial court as to which of these various filings were frivolous and which were meritorious. If it is assumed, *arguendo*, that Lackey may have an argument based upon his 17-year wait on death row, McKenzie has the potential for an even stronger argument. That argument, however, cannot be adequately addressed until the trial court makes some determinations as to which of McKenzie's numerous filings were a legitimate exercise of the right of appeal and which constitute frivolous filings. Obviously the Court cannot allow a defendant to bootstrap himself into a cruel and unusual punishment argument by abusing the system to his advantage through the repetitive filing of meritless appeals and petitions.

While I do not necessarily agree that there is any merit to McKenzie's argument, it is apparent to me that consideration of the issue by the United States Supreme Court has presently been "postponed" only, and it is merely a matter of time before the federal courts are going to start subjecting death penalty cases to the analysis suggested by Justices Stevens and Breyer in the *Lackey* case. Accordingly, I would prefer that this issue be dealt with at the earliest possible date rather than waiting for a remand from the federal courts two years down the road--at which time McKenzie will be in a position to argue an additional two years of delay.

The Court has taken the position that the substantive issues raised by McKenzie's "Objection to Request for Execution Date"

13

(including the cruel and unusual punishment claim), are not proper issues for appeal in the present context since the only issue legitimately before the trial court was the request for a setting of a date and time for execution--a purely ministerial (non-substantive) act. Technically this may be correct. However, given that this is a death penalty case and the condemned man is purporting to raise constitutional issues--we should look to the substance rather than the "technical" form of his pleading. For example, in State v. Perry (1988), 232 Mont. 455, 758 P.2d 268, Perry, who had been convicted of second-degree murder some 17 years earlier in 1971, moved for a new trial based upon the alleged recantation of an accomplice. The State contended that Perry's only means of redress was a petition for post-conviction review and that the statutory time limit on such petitions had expired as of 1978. This Court declined to adopt the State's position.

> Whereas Perry's motion for a new trial cannot technically be denoted a petition for habeas corpus, nor do we treat it as such, the claim nevertheless sounds in the nature of a petition for habeas corpus.

*Perry*, 758 P.2d at 273.

Despite the incorrect form of the "motion" pleading, the Court addressed the substance of the motion and concluded that Perry had failed to prove that he was the victim of an unlawful conviction. *Perry*, 758 P.2d at 276.

McKenzie, like Perry, is well beyond the 5-year statutory deadline for filing petitions for post-conviction review. Section 46-21-102, MCA. However, the argument as to whether a lengthy delay before actual implementation of the death sentence

14

constitutes cruel and unusual punishment is a constitutional argument which, by its very nature, cannot be raised until the passage of a significant period of time.

In dismissing this appeal, the courts of the State of Montana are sending this matter on to the federal courts without having addressed this constitutional issue. I fear that we will have to address it at some future point and that it will become all the more thorny for the delay.

W. William Leaphart
Justice

15